*WALWORTH*
*v.*
*HENDERSON*

## T. O. STARK, Receiver, *v.* BURKE, WATT & Co. et al.

The charter of a bank determines the powers of the directors and as regards the corporation the rights of the public.

The charter of a bank and the subscription constitute a contract between the corporation and its stockholders by which their mutual rights and obligations are fixed, and directors have no power to change it without the consent of the stockholders; and as by the amendatory Act of incorporation of the Atchafalaya Bank in 1836, it was provided, that the balance of its stock on each share should be paid on the first Monday in March, 1838; *unless otherwise ordered by the Directors, to be paid at longer periods of time, or in less proportions at different times,* and as the Directors did not prolong the payments or change the proportions before the first Monday in March, 1838, their control after that date ceased, and each stockholder was on the first Monday in March, 1838, the debtor of the corporation for the whole amount of his subscription.

Under the Act of 1842, commissioners we.e appointed to take charge of the assets and to liquidate the affairs of the Atchafalaya Bank, and all judicial proceedings by its creditors against the corporation were stayed. The duties of the commissioners, in all matters not specially provided for were assimilated to those of syndics of insolvent estates, and the proceedings were to be the same as those in cases of voluntary surrender by individuals. *Held:* that although the creditors could not sue the corporation, nor sue the stockholders directly, yet they had the right to compel the commissioners to sue the stockholders; *therefore,* a commissioner can not in reply to the plea of prescription set up by a stockholder avail himself of the rule, *contra non valentem agere, non currit prescriptio.*

The Act approved March 14, 1839, entitled "an Act to relieve such of the banks of this State, whose charters may have been forfeited by a suspension of specie payments, from such forfeiture," must in order to be operative, have been accepted by the stockholders, or at least a majority of them.

APPEAL from the Fifth District Court of New Orleans, *Buchanan,* J. *P. E. Bonford,* and *Elmore & King,* for plaintiff.

*E. Briggs, M. M. Cohen, Robert Mott, H. H. Strawbridge, E. Rawle, Clarke & Bayne,* for defendants and appellants.

SLIDELL, C. J. In June, 1849, the Receiver of the Atchafalaya Bank instituted the present action against a number of its stockholders. Exceptions were pleaded, which were disposed of by the decisions of the Supreme Court, reported in 5 Annual, 741. The case having been remanded for further proceedings, has resulted in a judgment against the defendants, for a contribution on the shares held by them at the date of the insolvency of the bank. From that judgment a portion of the defendants have appealed.

By the original Act of incorporation, the whole stock was to be paid in as early as 1st January, 1839; but by an amendatory Act in 1836, it was provided that the stock of said company shall be paid in the following manner, to-wit: ten dollars on each and every share on or before the first of April, 1836, and five

dollars on each and every share on the first Monday of each succeeding month, until fifty dollars on each share shall have been paid. The balance of fifty dollars on each share shall be paid as follows: twenty-five dollars on each share on the first Monday in March, 1837, and the balance on each share on the first Monday in March, 1838, unless otherwise ordered by the Directors, to be paid at longer periods of time, or in less proportions at different times, and no security for stock shall be required.

The authority conferred on the directors to prolong the payments or change the proportions was not exercised before the first Monday in March, 1838. We are of opinion that after that date their control ceased; and consequently conclude that on the first Monday of March, 1838, each stockholder was the debtor of the corporation for the whole amount of his subscription. The charter and the subscription constitute a contract between the corporations and its stockholders. By this contract their mutual rights and obligations are fixed, and the directors have no power to change it without the consent of stockholders. It is to the charter also that reference is to be made to determine the rights of the public; and consequently we are of opinion that as between creditors of the bank and its stockholders the whole amount of their subscriptions is to be considered as having become due on the first Monday of March, 1838; as constituting on that day a debt due by each stockholder to the corporation. See *Brown* v. *Union Insurance Company*, 3 Annual, 183. Angell & Ames on Corporations, 474. *Baltimore Turnpike Co.* v. *Barnes*, 6 Har. & John. 57.

The question then presents itself whether this liability is barred by the prescription of ten years, which a number of the stockholders have pleaded.

We entertain no doubt that the plea would be tenable if the original relations between the corporation and its stockholders had subsisted. As soon as the debt matured, it was an obligation which the corporation had a right to enforce by suit, and the prescription of ten years began to run against the corporation, the creditor of the debt due. This is settled in our jurisprudence by the case of *Brown*, just cited, and the doctrine appears to be the same in our sister States. See Angell & Ames on Corporations, 474. *Baltimore Turnpike Company* v. *Barnes*, 6 Har. & John. 57.

But it is said that prescription was suspended by events which subsequently occurred. The circumstances referred to are as follows: In 1842, judicial proceedings for a forfeiture of the charter were instituted by the State, which resulted in a decree of forfeiture in March of that year. Under the Act of 1842, commissioners were immediately appointed to take charge of the assets and liquidate its affairs, and all judicial proceedings by its creditors against the corporation were stayed. The powers and duties of those commissioners, in all matters not specially provided for, were assimilated to those of syndics of insolvent estates, and the proceedings were to be the same as those in case of voluntary surrenders by individuals. Sec. 24, Act of 1842, p. 146. Now it is said that under this legislation it was the duty of the commissioners to take charge of the assets of the bank, convert them into cash and pay off the debts; that if there was a surplus, they were bound to hand over the same to the stockholders; that if there was a deficiency, they were bound to call upon the stockholders to pay up their arrearages of stock to an amount sufficient to meet that deficiency; but that until such deficiency was so ascertained, no suit could have been maintained against the stockholders by the commissioners,

and that the creditors themselves were prevented from suing the stockholders by the stay of proceedings. Under these circumstances the plaintiff invokes the benefit of the rule *contra non valentem agere, non currit prescriptio.*

It is true that after the stay of proceedings, creditors could not sue the corporation, nor could they, themselves, sue the stockholders. *Gas Light Company* v. *Bennet*, 6 Annual, 456. But they had a right to compel the commissioners to enforce the liability of all debtors of the corporation; they could act through the commissioners: ib.

Then the only remaining question is, could the commissioners, if required by creditors, have immediately sued the stockholders for the amount due on their stock; or, on the contrary would the stockholders have had a right to say, although the creditors of the bank, whom you represent, are unpaid, they must wait until you have first collected all the other debts and exhausted all the other property of the corporation, and when you have thus ascertained the deficiency, then only and to that extent can you sue and compel us to pay?

We think the stockholders could not have been permitted thus to resist a suit brought by the commissioners at the instance of creditors. The commissioners could have successfully replied—the money you promised to bring into the bank, and upon the promise of which creditors trusted the bank, is long since due—the creditors have a right to immediate payment—you have no equity to turn them over to a recourse upon other debtors of the bank—pay what you owe, and wait for your reimbursement out of the other assets as we may be enabled to realize them.

For these reasons, we are of opinion that the plea of prescription should have been maintained. This plea, however, has only been made by the following parties appellant, namely: the *Commercial Bank, Simon, Turner & Renshaw, Landis, Hubbell, Watt, Nichols, Reed,* the executors of *Whitney, Stanton, Burke, Watt & Co., Harrod, U. S. Bank of Pennsylvania. Ellicott & Co.* v. *Burthe*

The appellants who have not so pleaded, are *Martin,* administrator of estate of *Moore, Caldwell, Hall,* and the *Consolidated Association.*

*Martin* is the only one of the four last named appellants who has offered any argument here in support of his appeal. He relies upon prescription, but has not pleaded it. The only other point which he has presented in his brief, is his right to be relieved under the second section of the Act approved March 14, 1839, entitled "an Act to relieve such of the banks of this State whose charters may have been forfeited by a suspension of specie payments from such forfeiture," which Act he alleges was accepted by the bank, and by *Moore,* whose estate he represents, and who was a stockholder for forty shares, on which fifty dollars only had been paid. He has not directed our attention to any evidence showing that this Act was accepted by himself or any of the stockholders of the bank. We are of opinion that without such an acceptance by the stockholders or at least a majority of them, the Act in question was inoperative to change the charter of the corporation by reducing its capital, even supposing such to have been the intention of the legislature. In the case of *Hepburn* v. *The Commissioners of the Exchange Bank,* the acceptance of the Act of 1839, was admitted.

Another appellant is *J. L. Riddell,* whose claim as a holder of certain notes of the Atchafalaya Bank, was rejected by the District Judge. We have con-

sidered the reasons given by the District Judge, and are not prepared to say that the evidence authorized a different conclusion.

It is therefore decreed, that the judgment of the District Court against the appellants, the *Commercial Bank, Simon, Turner & Renshaw, Landis, Hubbell, Watt, Nichols, Reed,* the executor of *Whitney, Stanton, Burke, Watt & Co., Harrod,* the *United States Bank of Pennsylvania,* and *V. Burthe* be reversed, and that there be judgment in favor of said appellants and defendants, the costs of the suit as to them in both courts to be paid by the plaintiff.

It is further decreed, that as to the defendants and appellants, *Martin* administrator, *Caldwell, Hall,* and the *Consolidated Association,* the judgment of the District Court be affirmed, and that the said appallants pay the costs of their appeals respectively.

It is further decreed as to the appellant *Riddell,* that the judgment rendered against him by the District Court be affirmed, and that he pay pay the costs of his appeal.