HENRY ROOT

*v.*

THOMAS SINNOCK.

*Filed at Springfield March 23, 1887.*

1. STOCKHOLDER'S LIABILITY *for debts of the corporation—a charter construed.* The charter of a private bank contained this proviso: "*Provided, also,* that the stockholders in this corporation shall be individually liable, to the amount of their stock, for all the debts of the corporation; and such liability shall continue for three months after the transfer of any stock on the books of the corporation:" *Held,* that the stockholders were each individually liable to pay to the creditors of the bank, not merely the balance unpaid upon subscriptions for stock, but to the extent of the nominal or face value of the stock held by them, for debts of the bank.

2. SAME—*what stockholders liable, as respects the time of ownership.* Under such a statutory provision, it is not essential to the stockholder's liability that he be such at the time the creditor's cause of action shall have accrued. It is sufficient if he is a stockholder when the suit is brought against him.

3. The expression, "all stockholders," in the absence of any legislative indication to the contrary, must be regarded as including not only those who were such at the time the indebtedness was incurred, but all those who successively stand in their shoes in respect to the same stock.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Adams county; the Hon. CHARLES J. SCOFIELD, Judge, presiding.

This was assumpsit, by appellee, against appellant. The declaration contained two counts, as follows:

"For that whereas, heretofore, to-wit, on the 26th day of March, A. D. 1869, at, to-wit, the county aforesaid, by a certain public law of the State of Illinois, entitled 'An act to incorporate the Union Bank of Quincy,' the Union Bank of Quincy became and was incorporated, and said Union Bank of Quincy was, on the first day of June, A. D. 1883, and was from thence hitherto, and down to the time of the closing of its doors, as hereinafter mentioned, hath been and was, engaged in the business of banking, at the city of Quincy, in said Adams county; and the said Union Bank of Quincy, on said first day of June, A. D. 1883, had, and from thence hitherto and down to the time of said closing of its said doors hath had and did have, a savings department connected with and constituting a part of its said banking business, in which said savings department said Union Bank of Quincy received deposits at interest, from divers and sundry persons. And the said plaintiff avers, that said Union Bank of Quincy, on, to-wit, the first day of September, 1884, was and still is indebted to said plaintiff in a large sum of money, to-wit, the sum of $7200, for so much money deposited by said plaintiff with said Union Bank of Quincy, in its said savings department, at different times between the first day of June, A. D. 1883, and the first day of February, A. D. 1884, and in the further sum of, to-wit, $500, for interest upon the moneys so deposited as last aforesaid; and said plaintiff further avers, that said defendant, on said first day of June, A. D. 1883, was, and from thence hitherto has been and still is, a stockholder in and owner of a large number of shares, to-wit, one hundred shares, of the capital stock of said Union Bank of Quincy, of the par value of $100 each share; and the said plaintiff further avers, that the said Union Bank of Quincy, during the month of May, A. D. 1884, and on, to-wit, the 15th day of said last named month, closed its doors and suspended pay-

ments; and the said plaintiff further avers, that he did afterwards, to-wit, on the first day of August, A. D. 1884, make demand of said Union Bank of Quincy for the payment of the several sums of money so due him from said Union Bank of Quincy, but said Union Bank of Quincy then and there refused to make payment of the same; and the said plaintiff avers, that said Union Bank of Quincy, after the said closing of its said doors, never opened the same for the resumption of business, and never resumed business as a bank, but afterwards, on, to-wit, September 16, A. D. 1884, made an assignment to one John P. Mikesell, for the benefit of its creditors, by means whereof, and by force of the said act above mentioned, the said defendant became liable to pay said plaintiff the indebtedness so due and owing from said Union Bank of Quincy to said plaintiff, to the extent of the aggregate amount of the shares of stock so as aforesaid held by said defendant in said Union Bank of Quincy, reckoned at the par value of $100 per share, and being so liable, the said defendant, in consideration thereof, afterwards, to-wit, on the day and year last aforesaid, at, to-wit, the county aforesaid, undertook, and then and there promised to pay him, said plaintiff, said indebtedness last named, to the extent last aforesaid, on request.

"And also for that, whereas, heretofore, to-wit, on the 26th day of March, A. D. 1869, at, to-wit, the county aforesaid, by a certain other public law of the State of Illinois, entitled 'An act to incorporate the Union Bank of Quincy,' the Union Bank of Quincy became and was incorporated, and said Union Bank of Quincy was, on the first day of June, A. D. 1883, and from thence hitherto, and down to the time of closing its doors, as hereinafter mentioned, hath been and was engaged in the business of banking at the city of Quincy, in said Adams county, Illinois, and said Union Bank of Quincy, on said first day of June, A. D. 1883, had, and from thence hitherto and down to the time of said closing of its said doors hath had and did have, a savings department connected with

and constituting a part of its said banking business, in which said savings department said Union Bank of Quincy received deposits at interest, from divers and sundry persons; and the said plaintiff avers, that said Union Bank of Quincy, on, to-wit, the first day of September, 1884, was and still is indebted to said plaintiff in a large sum of money, to-wit, the sum of $7200, for so much money deposited with said Union Bank of Quincy in its said savings department, at different times, between the first day of June, A. D. 1883, and the first day of February, A. D. 1884, and in the further sum of, to-wit, $500, for interest upon the money so deposited, as last aforesaid; and the said plaintiff further avers, that the said Union Bank of Quincy, during the month of May, A. D. 1884, and on, to-wit, the 15th day of said last named month, closed its doors and suspended payment; and the said plaintiff avers, that he did afterwards, on, to-wit, the first day of August, A. D. 1884, make demand of said Union Bank of Quincy for the payment of the several sums of money so as aforesaid due him from said Union Bank of Quincy, but the said Union Bank of Quincy then and there refused to make payment of the same; and the said plaintiff avers, that at the time of the said closing of said doors of said Union Bank of Quincy, the defendant was and still is the owner of a large number, to-wit, of one hundred, shares of the capital stock of said Union Bank of Quincy, of the par value of $100 each share; and the defendant further avers, that said Union Bank of Quincy, after the said closing of its said doors, never resumed the business of banking, but afterwards, on, to-wit, September 16, 1884, made an assignment to one John P. Mikesell, for the benefit of its creditors, by means whereof, and by force of the said act above mentioned, the said defendant became liable to pay said plaintiff the said indebtedness so due and owing from said Union Bank of Quincy to said plaintiff, to the extent of the aggregate value of the shares of stock in said Union Bank of Quincy so as last aforesaid owned by

23—120 ILL.

said defendant, reckoned at said par value of $100 per share, and, being so liable, the said defendant, in consideration thereof, afterwards, on, to-wit, the day and year last aforesaid, at, to-wit, the county aforesaid, undertook, and then and there promised, to pay him, the said plaintiff, said indebtedness last aforesaid, to the extent last aforesaid, upon request, yet the said defendant, though often requested so to do, hath not paid the said indebtedness in this declaration, or any part thereof, but so to do hath wholly refused, to the damage of said plaintiff in the sum of $7500, and therefore he brings his suit."

Appellant demurred, severally, to each count of the declaration, but the court overruled the demurrer, and appellant refusing to plead over, and abiding by his demurrer, the court gave judgment in favor of appellee. An appeal was prosecuted by appellant from this judgment, to the Appellate Court for the Third District, and that court gave judgment affirming the judgment of the circuit court. The present appeal is from that judgment of affirmance.

Messrs. SIBLEY & POPE, and Mr. A. WHEAT, for the appellant:

The proviso to section 7 of the charter has reference to the first provision of section 4, which relates to the unpaid portion of the stock. Being a proviso, it must be strictly construed. Potter's Dwarris on Stat. 118-120; 1 Kent's Com. 463; *Minis* v. *United States,* 15 Pet. 445; *Voorhees* v. *Bank of the United States,* 11 id. 471; *Brown* v. *Juliet,* 1 Scam. 260.

Both at common law and in equity, whatever was paid on stock directly to the corporation, was a payment primarily made for the use of its creditors, and was a discharge of the liability of the stockholders for the debts of the corporation to the extent so paid. As to the portion not so paid, the creditor had no means of reaching it at common law, but could get relief only in a court of equity, and even there he would be

remediless to the extent of the stock forfeited. *Sanger* v. *Upton*, 91 U. S. 60 ; *Tarbell* v. *Page*, 24 Ill. 47 ; *Insurance Co.* v. *Moore*, 84 id. 576 ; *Insurance Co.* v. *Manufacturing Co.* 97 id. 546 ; Field on Corp. sec. 96.

It is insisted on behalf of appellant, that if the stockholder is liable for anything more than for the stock subscribed for by him, the liability is upon the owner of the stock at the time the debt accrued, unless the debt accrued after he ceased to be the owner, and within three months after the transfer of his stock on the books of the corporation. *Culver* v. *Bank*, 64 Ill. 537 ; *Fuller* v. *Ledden*, 87 id. 310 ; *Hull* v. *Burtis*, 90 id. 213 ; *Moss* v. *Oakley*, 2 Hill, 265 ; *Judson* v. *Galena Co.* 9 Paige, 598 ; *Tracy* v. *Yates*, 18 Barb. 152 ; *Moss* v. *McCollough*, 5 Hill, 131 ; *Adderly* v. *Storm*, 6 id. 624 ; *Freeland* v. *McCollough*, 1 Denio, 414 ; *Hager* v. *McCollough*, 2 id. 119 ; *Williams* v. *Hanna*, 40 Ind. 335 ; *Chesley* v. *Pierce*, 32 N. H. 388 ; *Mokellumme* v. *Woodbury*, 14 Cal. 265.

Mr. William McFadon, for the appellee :

The proper construction of section 7 of the charter of the Union Bank of Quincy makes each stockholder therein liable for the debts of said bank, in an amount equal to the amount of stock held by him,—in other words, said section creates a double liability. Morse on Banking, 493 ; *Driggs* v. *Penniman*, 8 Cow. 395 ; *In re Empire Bank*, 18 N. Y. 218 ; *Bank of Poughkeepsie* v. *Ibbotson*, 24 Wend. 493 ; *In re Hollister Bank*, 27 N. Y. 396 ; *Slee* v. *Bloom*, 19 Johns. 456 ; 20 id. 683 ; *Bromley* v. *Goodwin*, 95 Ill. 120 ; *Wincock* v. *Turpin*, 96 id. 135 ; *Law's Appeal*, 105 Pa. St. 57.

The language means, a liability of the stockholder to a creditor in an amount equal to the amount of his stock. *Thompson* v. *Meisser*, 108 Ill. 362.

Such clauses are made for the benefit of creditors, and they give the creditor, and to no one else, a right of action against the stockholder. Thompson on Stockholders, sec. 342 ; *Culver*

v. *Bank*, 64 Ill.538; *Fuller* v. *Ledden*, 87 id. 313; *McCarthy* v. *Lavasche*, 89 id. 276; *Hull* v. *Burtis*, 90 id. 217; *Jacobson* v. *Allen*, 20 Blatchf. 525; *Norris* v. *Johnson*, 34 Md. 485.

Under the language of the charter in question, the suit was rightfully brought by appellee, a creditor of said bank, against appellant, a stockholder therein,—and that he was such stockholder is nowhere questioned, in the brief and argument of appellant. *Meisser* v. *Thompson*, 9 Bradw. 370; *Bank of Poughkeepsie* v. *Ibbotson*, 24 Wend. 479; *McCarthy* v. *Lavasche*, 89 Ill. 272; *Fuller* v. *Ledden*, 87 id. 313.

The Union Bank of Quincy will be presumed to have received deposits on the faith of the charter liability of stockholders, and under the circumstances the stockholders should be held to a strict accountability. *Fuller* v. *Ledden*, 87 Ill. 313.

The language of the charter of the Union Bank of Quincy makes all stockholders liable for all debts of the corporation. It does not make stockholders liable for debts coming into existence only while they were stockholders. Hence, if appellant owned one hundred shares of capital stock when said bank closed its doors, and still owned the same at the time of suit brought, as charged in the second count of the declaration, he was liable to appellee under that count. *McClaren* v. *Franciscus*, 45 Mo. 465; *Middleton Bank* v. *Magill*, 5 Conn. 28; *Deming* v. *Bull*, 10 id. 409; *Curtis* v. *Harlow*, 12 Metc. 6; *Longley* v. *Little*, 26 Me. 162; *Child* v. *Coffin*, 19 Mass. 64; *McCollough* v. *Moss*, 5 Denio, 567; Thompson on Stockholders, sec. 90.

The doctrine, that under the charter, in the case at bar, a stockholder, at the time the bank closed its doors, is liable, is subject to this limitation: that if any stockholder has assigned his stock to evade liability, he may be treated by a creditor as still a stockholder in such corporation. Angell & Ames on Corp. sec. 623; *McClaren* v. *Franciscus*, 45 Mo. 468.

Mr. Justice Scholfield delivered the opinion of the Court:

We have carefully considered the questions discussed in the printed arguments before us, and we concur in the conclusions reached by the Appellate Court.

*First*—The contention of appellant is, that the liability imposed by the seventh section of the charter of the Union Bank of Quincy, upon the stockholders, is, simply, to pay the creditors of the bank the balance unpaid upon subscriptions for stock. The language of the seventh section, affecting this question, is: "*Provided, also,* that the stockholders in this corporation shall be individually liable, to the amount of their stock, for all debts of the corporation; and such liability shall continue for three months after the transfer of any stock on the books of the corporation." The plain and obvious meaning of this language is, to our minds, the stockholders are liable to creditors for their debts, to an extent measured by the amount of their stock. Omitting the clause expressing the extent of liability, and we have this: "The stockholders in this corporation shall be individually liable for all debts of the corporation." If this were all, their liability would be unlimited,—they would be absolutely liable for all debts of the corporation The intention, however, is to limit that liability; but to what extent? The answer is: "To the amount of their stock,"—not to the amount unpaid upon their stock. The language makes the liability because of the fact of being stockholders, and not because of the fact of being debtors of the corporation. If the liability intended was simply to pay the creditor the amount due the corporation, what would have been more natural and easy than to have used just that language? The difference between a stockholder, and a debtor for unpaid stock, is recognized in several of the sections, and so was, at the time, in the legislative mind, and it must therefore be presumed that words expressing the one would not have been used to express the other, in this instance. Thus, in section 3, a majority of the corporators are required to

designate a time and place for the first election of the directors of said corporation "by the parties subscribing for the capital stock thereof, and each share of stock so subscribed for shall be entitled to one vote." By section 4, "the payment of the stock so subscribed shall be made and completed by the subscribers at such time and manner as the said directors shall prescribe." By section 14, "the directors shall have the right, in case that any stockholder shall fail to pay any installment for thirty days after a call thereof, * * * to declare the stock forfeited to the corporation, * * * or * * * sue for and recover the entire amount of subscription remaining unpaid." By section 5, "no subscriber of the stock * * * shall have the right to vote at the first election of the directors unless he shall have paid ten per cent of the amount subscribed, * * * nor shall any subscriber or stockholder have, at any time, the right to vote at any election, held by virtue of this act, who shall be in default to the corporation for any payments, either in stock held by him, or otherwise." And by section 10, "in all elections of directors, and in deciding all questions at meetings of stockholders, each stockholder shall be entitled to one vote for each share; * * * and no stockholder whose liability is past due, shall be allowed to vote." In no instance is the word "stock" used in the sense of a debt or obligation due from the stockholder, but it is at all times used to express the idea of property in the corporation,—what may be the subject of a debt, it is true, but is not itself a debt, any more than is any other property. And in this connection we will observe, that we are unable to appreciate the distinction which counsel seek to draw between the words, "liable to the amount of their stock," and the words, "liable in a sum equal to the amount of their stock," which is frequently found in similar charters, they conceding, as we understand their position, that, on the authority of decided cases, if the latter language had been here used, their client would be liable, as

held by the lower courts. But since the words, "to the amount of their stock," in no view mean the thing which is itself to be paid to the creditor, but are, in every view, simply used to express the measure by which the sum of money of which the creditors may enforce payment is ascertained, "liable to the amount of their stock" is but stating elliptically what is fully stated by the words, "liable in a sum equal to the amount of their stock." Liable to an amount, can mean only liable to pay a sum which reaches or comes up to, or, in short, equals, the given amount. So, here, the nominal or face value of the shares of stock is $100 each; and if A have two shares, we say the amount of his stock is $200,—the nominal or face value of his stock. And, therefore, to say that he is liable, to the amount of his stock, for the debts of the corporation, is only another form of saying that he is liable to the amount of $200 for the debts of the corporation.

Counsel for appellant, by contending that the liability of their client is only for the amount of his unpaid indebtedness on his subscription for stock, impliedly concede the correctness of this construction, for, if he be thus liable, the words "liable to the amount of," must be held to mean liable in a sum equal to the amount of the balance unpaid on his subscription for stock. The same necessity for comparison, and the same words of comparison, equally apply in either view, the only difference being, that the measure or standard by which the comparison is to be made, is, in one view, the nominal or face value of his stock, and in the other, the nominal or face value of the amount unpaid on his subscription for stock.

But this ought not now to be regarded an open question in this court. We have, in numerous cases, without much discussion, it is true, held or assumed that language of the same, or substantially the same, import, meant what we have indicated, in our opinion, this means. *Culver* v. *Third Nat. Bank of Chicago,* 64 Ill. 528; *Tibballs et al.* v. *Libby,* 87 id. 142; *Bromley* v. *Goodwin,* 95 id. 118; *Wincock* v. *Turpin,* 96

id. 141; *Harper* v. *Union Manf. Co.* 100 id. 225; *Eames et al.* v. *Doris,* 102 id. 350; *Thompson* v. *Meisser,* 108 id. 362; *Queenan et al.* v. *Palmer et al.* 117 id. 619. And the same construction has been placed upon like language in New York and Pennsylvania. *Slee* v. *Bloom,* 20 Johns. 683; *Briggs* v. *Penniman,* 8 Cow. 395; *Bank of Poughkeepsie* v. *Ibbotson,* 24 Wend. 473; *Matter of Empire City Bank,* 18 N. Y. 218; *Lane's Appeal,* 105 Pa. St. 57.

*Second*—The next question is, should it affirmatively appear that appellant was a stockholder when the cause of action accrued, or is it sufficient that he was a stockholder when suit was brought? In our opinion, it is sufficient that appellant was a stockholder when suit was brought. The liability is because of being a stockholder—that is, because of the ownership of stock. (*Wheelock* v. *Kost,* 77 Ill. 298.) As was said in *Brown* v. *Hitchcock,* 36 Ohio St. 681, "the expression, 'all stockholders,' must be regarded, in the absence of any legislative indication to the contrary, as including not only those who were such at the time the indebtedness was incurred, but all those who successively stand in their shoes in respect to the same stock." The liability being because of the ownership of stock, it follows the stock into whosesoever hands it may go, and whoever purchases it, does so at the risk of this liability; and, in consonance with this view, we have held, that the liability once discharged, the stock is thereafter free of any further liability on account of ownership. *Thebus* v. *Smiley,* 110 Ill. 316.

The rule is thus stated in Thompson on Liability of Stockholders, sec. 90: "But in the absence of special statutory provisions, the general rule, applicable alike to the English joint stock company and the American corporation, is, that liability as contributors, or to creditors, attaches not merely to those who are members at the time or before the debt was contracted, but to those who were such, either, first, when by reason of the stoppage, dissolution or winding up of the com-

pany, the right to transfer shares ceased; or, second, in the case of direct proceedings by creditors against shareholders, when the right of the creditors against the shareholder became fixed in an appropriate proceeding." See, also, to like effect, *Middleton Bank* v. *Magill,* 5 Conn. 28; *Curtis* v. *Harlow,* 12 Metc. 3; *Holyoke Bank* v. *Bernbow,* 11 Cush. 183; *Johnson* v. *Summerville Dr. Bl. Co.* 15 Gray, 216; *McCulloch* v. *Moss,* 5 Denio, 567; *Matter of Empire Bank,* 18 N. Y. 223; *Johnson* v. *Underhill,* 52 id. 203; *McClaren* v. *Franciscus,* 43 Mo. 464.

The fact that we have held in *Buchanan* v. *Meisser,* 105 Ill. 638, and *Thompson* v. *Meisser,* 108 id. 359, that the stockholders, in such cases, are in effect partners, is not inconsistent with this view, since every assignment of stock makes a new partnership, and the new partnership assumes the debts of the old partnership; and the rule in such cases permits the creditor to pass by the partnership primarily liable, and sue that having assumed the debt. See Lindley on Partnership, 455, 456, and notes.

In *Culver* v. *Third Nat. Bank,* 64 Ill. 528, the present question was not considered. It was sufficient, there, that there was a right of recovery under the averments of the declaration. The remarks regarded as intimating contrary to the present ruling, were unnecessary to a decision of the question then being considered, and were not intended to announce any rule of law. *Fuller* v. *Ledden,* 87 Ill. 310, merely decides that the stockholder who owns stock when the debt is incurred, is liable; but that is not inconsistent with the liability of the owner of the stock at the time suit is brought. (*Thebus* v. *Smiley, supra.*) *Hull* v. *Burtis,* 90 Ill. 213, turned on the question whether the suit should have been in the name of the corporation, or in that of the creditor. And so, in our opinion, the demurrer was properly overruled as to both counts of the declaration.

The judgment is affirmed.

*Judgment affirmed.*