### [No. 3704.]
### ZANG ET AL. v. WYANT ET AL.

**1. CONSTITUTIONAL LAW—APPELLATE PRACTICE.**

The question of the validity of a statute on the ground that it was not constitutionally passed will not be considered if raised for the first time in this court.

**2. CORPORATIONS—BANKS—LIABILITY OF STOCKHOLDERS—PRACTICE.**

To enforce the liability of stockholders in an insolvent bank for the debts of the corporation under Session Laws, 1885, p. 264, the proper procedure is by suit in equity by a creditor or creditors, for the benefit of all the creditors. The assignee or receiver of an insolvent corporation has no right of action to enforce such liability.

**3. SAME.**

Where an insolvent bank makes an assignment for the benefit of creditors, the creditors are not required to await the collection or dispo-

| | |
|---|---|
| 25 | 551 |
| 28 | 377 |
| 25 | 551 |
| 18a | 102 |
| f 18a | 142 |
| 25 | 551 |
| 35 | 536 |
| f36 | 72 |
| f36 | 90 |
| 36 | 92 |
| 36 | 93 |

sition of all the doubtful claims or assets of the bank before bringing their action against the stockholders to enforce their statutory liability. The stockholders must pay promptly and take upon themselves the onus of delay and risk as to such claims.

**4. SAME—EXTENT OF LIABILITY.**

The liability imposed upon the stockholders of banking and certain other corporations by Session Laws of 1885, page 264, for the debts of the corporation, is double the amount of the par value of the stock owned by them respectively, notwithstanding they may have paid or are still indebted to the corporation for their stock. The liability imposed by the statute for the benefit of creditors is in addition to any liability of the stockholder to the corporation for subscription for stock.

**5. SAME—INTEREST.**

Where the debt of a corporation is one on which interest would be allowed against the corporation, it will also be allowed against the stockholders, in an action to enforce the statutory liability of the stockholders for the debts of the corporation.

**6. CORPORATIONS—STOCKHOLDERS—EVIDENCE.**

In an action against the stockholders of a bank to enforce their statutory liability for the debts of the bank, their relation to the bank as stockholders is sufficiently proven by the production in evidence of the "stock book" and the evidence of the assignee of the bank, who had been its cashier, that the book represented the stockholders in the bank, and was the only book kept for that purpose; that the book was kept in the ordinary course of business, and that the persons named, took part in the stockholders' meetings during the time their names appeared on the book.

**7. EVIDENCE—BOOKS OF ACCOUNT.**

In an action against the stockholders of a bank to enforce their statutory liability for the debts of the bank, the books of the bank kept by the employees of the bank in conducting its business are admissible in evidence. Sec. 4817, Mills' Ann. Stats. applies only where a party uses his books in evidence in his own behalf. In order to render the books admissible to show admissions against the party making them it is only necessary that they be shown to be his books, kept in the regular course of business, and that the entries were made by himself or an agent authorized to make them.

**8. SAME—PASS BOOK.**

The pass books issued to the depositors of a bank in which were entered the deposits at the time they were made were no better evidence than the entries entered in the balance book of the bank from deposit slips made at the time of the deposit, and although these entries were made by an officer of the bank and not by the stockholders, yet in making them he acted as the agent of the stockhold-

ers as well as of the bank, and the entries are as binding upon the stockholders as upon the bank.

9. EVIDENCE—CERTIFICATES OF DEPOSIT—CLAIMS FILED WITH ASSIGNEE.

In an action against the stockholders of a bank to enforce their statutory liability for the debts of the bank, where a judgment was sought upon certificates of deposit, the certificates being negotiable instruments transferable by indorsement and delivery, should have been produced in evidence to show the present ownership; or if lost or destroyed competent evidence of that fact should have been given, and the necessity of such proof was not obviated by the introduction in evidence of a list of verified claims presented to the assignee of the bank and allowed by the court, including these claims, and upon which dividends had been paid. Such an allowance did not constitute a personal judgment even against the bank.

10. LIABILITY OF STOCKHOLDERS—PARTIES.

In an action to enforce the statutory liability of stockholders of a bank for the debts of the bank, the fact that the bank and its assignee were not made parties defendant did not in any manner affect the rights of the stockholders, because whether sued alone or together with the bank and the assignee, they would have the right to interpose any defense to the claims of the creditors that the bank could.

11. PARTIES—DEMURRER—WAIVER.

After demurrer to complaint on the ground of a defect of parties, the objection is waived by answering over, and cannot be considered on appeal.

12. APPELLATE PRACTICE—ORIGINAL EVIDENCE.

Original evidence in a case cannot be heard by the appellate court on appeal.

*Appeal from the District Court of Arapahoe County.*

THIS is an equitable action brought by appellees as creditors of the North Denver Bank, in behalf of themselves and such other creditors as may join them, against appellants as stockholders in said bank, to enforce the statutory liability under the following statute:

"SECTION 1. Shareholders in banks, savings banks, trust, deposit, and security associations, shall be held individually responsible for debts, contracts and engagements of said associations, in double the amount of the par value of the stock owned by them respectively." Session Laws, 1885, p. 264, sec. 533, Mills' Ann. Stats.

The bank was duly incorporated under the laws of the state of Colorado, August 15, 1889, and did a general banking business until July 18, 1893, when it made a voluntary assignment of all its assets to one Amos H. Root, who thereupon gave bonds and duly qualified and was acting as such assignee at the time of the institution of this suit. The case was tried to the court, and judgment rendered against appellants for double the amount of the par value of the stock owned by each respectively. From these judgments appellants prosecute this appeal.

Messrs. MULLER & WEIL, Mr. LUCIUS WEINSCHENK, Messrs. BARTELS & BLOOD, Mr. S. S. SHERMAN, Mr. T. E. WATERS and Mr. JAMES H. BROWN, for appellants.

Mr. PHILO B. TOLLES and Mr. THOMAS D. COBBEY, for appellees.

MR. JUSTICE GODDARD delivered the opinion of the court.

The specifications of error are voluminous, and, in addition to the questions they raise as to the admissibility and sufficiency of certain testimony, challenge the right of appellees to maintain the action, and also the construction that the court below gave to the statute under which the recovery is sought. In their printed argument, for the first time, counsel question the validity of the act itself, upon the ground that it was never constitutionally passed. Under former decisions of this court and the court of appeals this question is not properly before us for consideration. *Marean v. Stanley*, 21 Colo. 43 ; *Rice v. Carmichael*, 4 Colo. App. 84.

Counsel for appellants insist that the assignee was alone entitled to maintain the action, and that the creditors themselves cannot invoke the interposition of a court of equity to enforce the liability of stockholders, under this statute. Upon whom the right to enforce the remedy devolves, and the mode of procedure that should be adopted, have been in controversy

in many of the courts of last resort, and have been variously
decided, some holding that the liability is primary, and
enforceable in an action at law by an individual creditor
against one or more of the stockholders, while in others, and
by far the greater number, it is held that the fund created
by the statute is in the nature of a security for the common
benefit of all the creditors, and that a suit in equity affords
the most effectual and convenient remedy for its enforcement;
that since the fund is exclusively for the benefit of the cred-
itors, and forms no part of the assets of the corporation, the
right of action accrues to the creditors themselves, and in the
absence of a statute conferring the right, neither the assignee
nor receiver of an insolvent corporation can maintain the
action. *Terry v. Little,* 101 U. S. 216; *Pollard v. Bailey,* 20
Wallace, 520; *Horner v. Henning,* 93 U. S. 228; *Farnsworth
v. Wood,* 91 N. Y. 308; *Pfohl v. Simpson,* 74 N. Y. 137;
*Mathez v. Neidig,* 72 N. Y. 100; *Griffith v. Mangam,* 73 N. Y.
611; *Wincock v. Turpin,* 96 Ill. 135; *Dutcher v. Bank,* 12
Blatchford, 435; *Jacobson v. Allen,* 20 Blatchford, 525; *Min-
neapolis Paper Co. v. Swinburn P. Co.,* 66 Minn. 378; *Um-
sted v. Buskirk,* 17 Ohio St. 113; *Wright v. McCormack,* 17
Ohio St. 86; *Crease v. Babcock,* 10 Metcalf (Mass.), 525;
*L. F. C. Association v. Watkins,* 70 Mo. 13; *Runner v. Dwig-
gins,* 46 N. E. Rep. (Ind. Sup. Ct.) 580; Cook, Stock &
Stockholders, § 280; Thompson on Corp. § 3560; Morawetz,
Private Corp. § 869.

In *Terry v. Little, supra,* Chief Justice Waite, in discuss-
ing the procedure that should be adopted for the enforce-
ment of a liability provided in the charter of the Merchants'
Bank of South Carolina, in language substantially the same
as that used in our statute, said:

"Undoubtedly, the object was to furnish additional security
to creditors, and to have the payments when made apply to
the liquidation of debts. So, too, it is clear that the obliga-
tion is one that may be enforced by the creditors; but as it
is to or for all creditors, it must be enforced by or for all.

The form of the action, therefore, should be one adapted to the protection of all."

In *Pfohl v. Simpson, supra,* it is said:

" A suit in equity laying hold of all the stockholders in like category and promoted for the benefit of all creditors having like interest, is peculiarly adapted to work out exactly just and equitable results. * * * The object and effect is only to bring to one forum the determination of rights, which must, if prosecuted separately, more or less conflict, to mutual harm. Before that one forum, in one suit, the respective rights and the respective liabilities can be ascertained and determined, and each get his own, and be subjected to his own, and not another's. And the equities between the respective stockholders can also be adjusted and settled."

In the recent case of *Runner v. Dwiggins,* the question as to the right of the assignee of an insolvent corporation to maintain the action was involved, and upon the authority of a large number of the adjudged cases, and the rule as generally laid down in the text-books, his right to maintain the action was denied. Jordan, chief justice, speaking for the court, said:

" Certainly, it cannot be asserted with any reasonable support that this peculiar liability imposed by the statutes upon those who become shareholders of a banking association organized under the existing law, is in any sense an asset, right or interest of the bank, which it as an insolvent debtor can, by its deed of assignment, pass to its assignee, or in any manner vest the enforcement thereof in him. In the absence of some statutory provision conferring the right, neither the corporation nor its assignee nor receiver can enforce such a liability as that in question."

We have carefully examined the cases cited and relied upon by counsel for appellants as sustaining their contention. It is true that these cases, while holding that the fund can be reached only by a proceeding in equity, sustain the right of the receiver to enforce the remedy. We are, however, satisfied that the foregoing cases announce the generally accepted

rule, and that, both upon reason and authority, the additional liability of stockholders imposed by our statute constitutes a fund for the benefit of all the creditors, which may be pursued in equity for their common benefit, by or for all; and an assignee whose trust relates only to the corporate assets acquires no right to enforce this statutory obligation.

The right to maintain the present action is also challenged because it is prematurely brought. It is argued that if, as we have seen, the fund provided by the statute is in the nature of an additional security for the creditors, the liability of the stockholders is secondary, and not enforceable until the assets of the corporation have been exhausted. It is undoubtedly true that this fund does not constitute the primary or regular fund for the payment of the corporate liabilities and that the corporate funds are the primary resource to which creditors must look for the payment of their debts and the discharge of the corporate obligations; but a well recognized exception to this rule exists when, by reason of dissolution or insolvency, an action against the corporation would be unavailing. Cook on Stock and Stockholders, sec. 200; *Terry v. Tubman*, 92 U. S. 156; *Hodges & Wilson v. Silver Hill Mining Co.*, 9 Ore. 200.

We think the facts averred in the complaint and disclosed by the evidence bring this case within this exception. It appears that the North Denver Bank, on July 18, 1893, was insolvent, and made an assignment of all its assets; that the appellees filed their claims with the assignee, and the same were allowed, and there has been paid only twenty per cent of the original amounts. No further sum having been realized during the length of time that has elapsed, it is evident that the remaining assets, if any, consist of worthless or doubtful claims. Under these circumstances the creditors ought not to be compelled to await their collection, or delay the enforcement of the statutory liability against the stockholders; but justice requires that the stockholders themselves should be compelled to pay their claims, and look to the assignee for whatever may be realized from the remaining assets. *Moses*

*v. O' Coee Bank*, 1 Lea, 398; *Stark v. Burke et al.*, 9 La. Ann. 341.

As was said in the former case:

"They (creditors) will not be required to wait the collection of doubtful claims, or claims in litigation. The stockholders must pay promptly and take upon themselves the onus of delay and risk as to all such claims."

For these reasons we think the foregoing objections to the maintenance of this action by appellees were properly overruled.

It is further contended that the court below erred in its conclusion as to the extent of the liability imposed by the statute, and in rendering judgment against each of the stockholders in double the amount of the par value of the stock owned by them respectively.

The language of the statute is: "Shareholders in banks * * * shall be held individually responsible for debts * * * of said associations, in double the amount of the par value of the stock owned by them respectively."

It is said that the true intent and meaning of this language is to make the stockholders responsible to the amount of stock subscribed, and in addition thereto a sum equal to its par value, or, as expressed, by counsel: "He is first liable to the corporation to the full par value of his stock, and next, liable to the creditors in an equal amount;" and that this constitutes the double liability contemplated by the statute; that the judgment of the court below in effect imposed upon them a triple liability. As supporting this view counsel cite Beach on Private Corp. § 152; Thompson's Liability of Stockholders, § 37; 1 Cook on Stockholders, etc. § 215; 2 Morawetz on Private Corp. § 881.

For instance, as said by Mr. Beach: "Statutes imposing a liability 'to double the amount of stock held by them' receive the same construction as those making shareholders liable 'to the amount of their stock.'" And like expressions are found in the other works referred to. As supporting this conclusion they cite *Perry v. Turner*, 55 Mo. 418; *Matthews v.*

*Albert,* 24 Md. 527,; *Norris v. Johnson,* 34 Md. 485; *Booth v. Campbell,* 37 Md. 522; *Schricker v. Ridings,* 65 Mo. 208; *Gay v. Keys,* 30 Ill. 413.

In addition to these Mr. Beach also cites *Appeal of Parish et al.,* 19 Atl. Rep. 569.

Upon a careful examination of these cases we are unable to find any warrant for the rule as announced. In *Matthews v. Albert* and in *Norris v. Johnson,* the statute under consideration provided that the stockholders were severally and individually liable to the creditors of the company to an amount equal to the amount of the stock held by them respectively, etc., and it was held that the liability to creditors was measured by the par value of the stock, without reference to the amount they may have paid on the stock.

To the same effect is *Gay v. Keys, supra.* In *Schricker v. Ridings,* the only question considered was whether a stockholder could be made liable to a creditor when the full amount of stock owned by him had been paid, under sec. 6, art. 8, of the Constitution of Missouri as amended in 1870, which enacted that " in no case shall any stockholder be individually liable in any amount over and above the amount of the stock owned by him or her; " and the court held that he could not, by reason of the negative form of expression employed, but said : " If the amendment of 1870 had declared in express terms that every stockholder should be individually liable to the amount of the stock owned by him it might well be argued, on the authority of the cases cited by the plaintiffs' counsel, that as they were already liable to the creditors of the corporation for the full amount of their stock, paid and unpaid, the constitution intended to provide further security for such creditors by superadding the individual liability of stockholders in a sum equal to the amount of their respective shares of stock."

We find no expression in any of these decisions that intimates that statutes imposing a liability " to double the amount of stock held," should be given the same signification and receive the same construction as those making shareholders lia-

ble " to the amount of their stock," except in *Perry v. Turner*, where the court refers to sec. 6, art. 8 of the Constitution of Missouri of 1865, which provided that stockholders should be individually liable, over and above the stock owned by them, in a further sum at least equal in amount to such stock, as creating a double liability. ·While in the *Appeal of Parish*, a case that involved the construction of a statute which, like ours, imposed a liability upon stockholders " to the extent of double the amount of their stock," the court clearly shows that this language is not to be construed to mean the same as that which limits the liability of stockholders " to an amount equal to the stock held," but that the latter phrase imposes a single, while the former imposes a double, liability.

It has been almost uniformly held that when a statute fixes the liability of stockholders " in an amount equal to the stock held by them," or " to the amount of their stock," it imposes a liability to the amount of the·par value of their shares, in addition to their subscription to the stock. *McDonnell v. Alabama Gold Life Ins. Co.*, 85 Ala. 401; *Briggs v. Penniman*, 8 Cowen, 387; *Pettibone v. McGraw*, 6 Mich. 441; *Root v. Sinnock*, 120 Ill. 350; *Lane's Appeal*, 105 Pa. St. 49; *Buenz v. Cook*, 15 Colo. 38.

It therefore logically follows that where the language is " in double the amount of stock held," an obligation in double the amount of such par value is imposed. *Appeal of Parish, supra; Terry v. Little, supra.*

In the latter case the charter under consideration provided that stockholders should be " liable and held bound * * * for any sum not exceeding twice the amount of * * * their * * * shares." After quoting this language, Chief Justice Waite said:

" This, as we think, means that on the failure of the bank each stockholder shall pay such sum, not exceeding twice the amount of his shares, as shall be his just proportion of any fund that may be required to discharge the outstanding obligations."

Although the double liability clause, as found in our stat-

ute, is, and for several years has been, in force, either by virtue of constitutional, statutory or charter provisions, in the states of Illinois, Minnesota and Pennsylvania, we are aware of no case wherein it has been expressly passed on and construed except in the *Appeal of Parish*. There are, however, cases which reached the courts of final resort in these jurisdictions where the amount recoverable thereunder was necessarily involved, and while the meaning of this clause was in no way raised or discussed, from an examination of the cases it will be seen that a liability in double the amount of the stock, in addition to the subscription, was enforced. *McCarthy v. Lavasche*, 89 Ill. 270 ; *Munger v. Jacobson*, 99 Ill. 349 ; *Harper v. Carroll*, 69 N. W. Rep. (Minn.) 610 ; *Allen v. Walsh*, 25 Minn. 543.

As we have seen, statutes of this character are intended to furnish a fund exclusively for the benefit of creditors, and under the rule laid down in all the cases, they are to be construed as imposing an individual liability upon stockholders, in addition to their liability to the corporation for the amount of their subscription to the stock. Accepting this as the correct rule of construction, the plain and obvious import of the language of our act is, to make stockholders in banking associations individually liable for the debts of the association in double the amount of the par value of the stock owned by them, notwithstanding they may have paid, or are still liable to the corporation, for their original subscription.

But it is said that the judgment is excessive for the further reason that appellees were allowed interest upon their claims. We do not think this claim is well founded. The stockholders are responsible for the debts, contracts and engagements of the bank, and if from the nature of the contract or debt, interest was allowable against the bank, it would constitute a part of its indebtedness, for which the stockholders are made liable, if within the maximum liability as fixed by the statute. *Richmond v. Irons*, 121 U. S. 27 ; *Wheeler v. Millar*, 90 N. Y. 353.

It is also urged that the relation of appellants, as stock-

holders of the bank, was not shown by competent and sufficient evidence. Mr. Root produced and identified what was known as the stock book of the bank. He testified that the book represented the stockholders in the bank, and was the only one kept for that purpose. Sec. 508, Mills' Ann. Stats. provides:

" It shall be the duty of the directors or trustees of every such corporation * * * to cause a book to be kept by the secretary or clerk thereof, containing the names of all persons, alphabetically arranged, who are or shall within one year have been stockholders of such corporation showing * * * the number of shares of stock held by them respectively, and the time when they respectively became the owners of such shares, and the time when they ceased to be such stockholders *. * *. Such books shall be presumptive evidence of the facts therein stated in any suit or proceedings against such corporation, or against any one or more stockholders."

This book conforms to these requirements. The witness also testified that it was kept in the ordinary course of business, while he was connected with the bank, and that he made some of the entries himself, and that the persons named took part in the meetings of stockholders during the period of time their names appeared on the book. We think the book, together with this testimony, was sufficient.

A further ground urged for reversal is that the findings of the trial court are not supported by proper and competent evidence.

The claims sued upon consist of money deposited with the bank, time and demand certificates of deposit, and drafts that had been issued by the bank, and protested for nonpayment. To prove these claims appellees called as a witness Mr. Root, who was cashier of the bank during the time the deposits were received and the certificates and drafts issued, and who had acted as assignee of the bank since it ceased doing business. He produced and identified what is called the daily balance book, which showed the accounts of depositors, and the time certificate register, and the demand certificate book,

which showed what certificates of deposit had been issued by
the bank, and also the draft book, which showed the checks
or drafts drawn by the bank, on the bank which kept its bal-
ances in the East.

Objection was made by appellants to the introduction of
these books in evidence, on the ground, first, that they were
not properly authenticated, and second, because they did not
constitute the best evidence, and were not admissible against
the defendants.    We think these objections are untenable.
The witness testified that he was familiar with the books of
the bank; that these books were used by the bank in con-
ducting its business; that the bank did not keep an individual
ledger, and the daily balance book was the only one that
showed the state of the depositors' accounts, and the entries
therein were made by the employees of the bank, under his
supervision, as cashier, and that of the other officers; that
the books had been in his possession since the assignment. .

It is insisted that this showing is not sufficient, under our
statute (sec. 4817, Mills' Ann. Stats.) to render the books
admissible.    The object of that section is to enable a party
to use his own books as evidence in his own behalf, and is
not applicable where the books are introduced to show admis-
sions against the interest of the party making them.

In order to render the books of a party admissible for the
latter purpose, it is only necessary that they be shown to be
his books, kept in the regular course of his business, and that
entries therein were made by himself or an agent, authorized
to make them.

In *McHose v. Wheeler*, 45 Penn. St. 32, it was held that
"a ledger found after the company had failed, with other
papers of the company in the office of a director, and he had
left the state, and which that director had produced in other
proceedings as the ledger of the company, is sufficiently proved
for admission in evidence as such; and entries therein, show-
ing the nature and amount of the indebtedness of the com-
pany to the plaintiffs, are competent evidence upon their part,
of the fact."

We think the showing was sufficient to admit the books in evidence. But it is said that the pass books of plaintiffs were better evidence of the amounts due than this balance book, and ought to have been produced. These pass books were small books issued by the bank to each of its depositors, in which the amount of their deposits were entered by the receiving teller at the time they were made. A deposit slip was made out by the depositor, showing the amount of his deposit, and presented with the pass book. These slips were preserved by the bank, and from them the entries in the daily balance book was made. The entries in both, therefore, correspond, and those in the pass books furnish no better evidence of the amounts deposited than the entries in the balance book, besides, this book showed what its name indicates—the balance remaining to the credit of a depositor after the checks which were drawn against it had been deducted. Nor can we agree with counsel that this evidence was not admissible against appellants. As we have seen, entries made in the due course of business, by those authorized to make them, are admissible against the corporation itself; and since the corporation is a mere legal entity organized for the benefit of its stockholders, and acting in all its dealings for them, and on their account, it follows that it is equally admissible against them. As was said in *Schalucky v. Field*, 124 Ill. 617:

"It is true that the entries are made by an officer of the bank and not by the stockholder. But such officer, in making the written entries, acts as the agent and representative not only of the corporate entity known as the Bank, but of the stockholders regarded as unincorporated partners. The written evidence of indebtedness is as binding upon the latter as upon the former."

We think, therefore, the books were properly admitted in evidence, and were competent to show the amount of the deposits for which the bank was liable; that certain certificates of deposit and drafts were issued by the bank, at the time, for the amounts, and to the parties therein named, and that such certificates were still outstanding. But this in

itself is not sufficient to entitle the parties to whom these evidences of indebtedness were so issued to recover thereon in this case. The certificates of deposit are negotiable instruments, and transferable by indorsement and delivery. It was therefore incumbent upon those who sought to recover thereon to prove their present ownership, and produce them upon the trial, or show by competent testimony that they had been lost or destroyed; otherwise a recovery might be had by the original payee, after he had transferred and parted with his title to the instrument to a *bona fide* holder, who would have a right to maintain an action thereon, notwithstanding such recovery. With the exception of six of the certificates of deposit sued upon, these essential requirements were not complied with. This is admitted by counsel for appellees, but they contend that the necessity for such proof was obviated by the introduction in evidence of a list of verified claims presented to the assignee and filed by him with the clerk of the district court, and the subsequent action of the court in relation thereto, from which it appears that these claims were allowed by the court, and dividends ordered paid thereon. This claim is based upon the theory that such an allowance constitutes a judgment binding upon the bank, and also upon the appellants. We think this view is erroneous. Such allowance does not constitute a judgment *in personam*, even against the bank. It is at most a judgment *in rem*, fixing the status of the claimant towards the assigned property, and establishing his right to participate in the benefits of the assignment. *Eppright v. Kauffman*, 90 Mo. 25.

We think, therefore, that the court erred in allowing a recovery upon these certificates, and upon the Chilcott draft for $13.25, without requiring them to be produced upon the trial, or their loss or destruction shown. This necessitates a reversal of the judgment, so far as the allowance of these claims is concerned. But since they are distinct, and can easily be separated from the other claims that were properly proved and allowed, a reversal of the entire judgment may be avoided. The judgment, therefore, as to all the appellees

except those whose recoveries are predicated thereon, is affirmed; and as to them, the judgment is reversed, and the cause remanded, with directions to allow them, or such of them as may elect so to do, a reasonable time in which to supply the proof that we have found to be requisite in such cases.

*Judgment modified.*

### ON REHEARING.

PER CURIAM. On petition for rehearing on the part of appellants, we have been favored with elaborate and able arguments, both printed and oral, by which the main questions upon which the decision of this cause is predicated, have been very fully presented and argued; but after mature deliberation, we are satisfied that the views announced in our former opinion are correct, and fully sustained by the authorities cited. One question argued, namely, the failure of appellees to make the bank and assignee parties, should be further noticed. That they were not joined as plaintiffs did not render the complaint defective, in failing to state a cause of action against the stockholders, for the reason already given, that the liability of appellants, as shareholders, is solely for the benefit of the creditors of the bank, and for the purpose of creating a fund over which neither the bank nor its assignee has any control or authority to collect; but conceding, that, for the purpose of a complete determination of all the rights involved, they should have been made parties defendant, by virtue of either sec. 497, Mills' Ann. Stats. or sec. 16 of the code, the failure to do so cannot be considered here, because appellants, by answering over, after demurrer, on the ground of defect of parties, have waived the right to raise the question on appeal: *Sams Automatic Car-Coupler Co. v. League*, 25 Colo. 129; 54 Pac. Rep. 642; nor does the fact that neither the bank nor assignee were made parties defendant, in any manner affect the rights of the stockholders, because, whether sued alone, or in connection with the bank and its assignee, they

would have the right to interpose any defense to the claim of the creditors which the bank could.

In support of their petition for rehearing, appellees have brought in and filed with the clerk of this court certain evidences of indebtedness of the bank, which were not presented on the trial below, and with respect to which the judgment has been reversed, and ask that we now modify our former opinion, by directing judgment upon these claims. We cannot consider original evidence in the case, and it is obvious, therefore, that the directions in the original opinion, with reference to these matters, are proper.

*Petitions for rehearing denied.*

CAMPBELL, C. J., not participating in this, or former, opinion.