924 So.2d 1067 (2006)
BRENNAN'S HOUSE OF PRINTING, INC.
v.
Anne E. BRENNAN, Sheila Brennan Dupepe, Marleen Brennan Oldenburg, Fonda M. Brennan.
Sarah Brennan, Amy Kernion, Daniel Brennan, Jr., Andrew Brennan and Robert Brennan
v.
Fonda Maria Brennan, Marleen Brennan Oldenburg and Sheila Brennan Dupepe.
Nos. 05-CA-647, 05-CA-648.
Court of Appeal of Louisiana, Fifth Circuit.
February 27, 2006.
*1069 W.K. Christovich, Kevin R. Tully, Christopher J. Alfieri, R. Kevin Hamilton, Christovich & Kearney, L.L.P., New Orleans, Louisiana, for Plaintiff/Appellee, Brennan'S House of Printing, Inc.
John A. Rouchell, Lance J. Arnold, Alexis P. Basilevsky Baldwin Haspel, L.L.C., New Orleans, Louisiana, for Defendants/Appellants, Sarah Brennan, Amy Kernion, Daniel Brennan, Jr., Andrew Brennan, Robert Brennan, and Anne Brennan.
Richard J. Tomeny, Jr., Becknell & Tomeny, Metairie, Louisiana, for Defendant/Appellee, Sheila Brennan Dupepe, as Administratrix of the Succession of Robert M. Brennan, and the Succession of Norma S. Brennan.
William J. Dutel, Rene P. Frederick, Frederick S. Ellis, Dutel & Tranchina, L.L.C., Covington, Louisiana, for Defendants/Appellees, Fonda Maria Brennan, Marleen Brennan Oldenburg and Sheila Brennan Dupepe.
Panel composed of Judges THOMAS F. DALEY, CLARENCE E. McMANUS, and WALTER J. ROTHSCHILD.
THOMAS F. DALEY, Judge.
At issue in this appeal is which group of heirs of Robert M. Brennan has the right of control over a closely held family corporation, Brennan's House of Printing (BHOP). At the center of the dispute is whether Robert M. Brennan, who was BHOP's incorporator in 1972 and sole shareholder until 1981, caused 100 or 200 shares of common stock of BHOP to be issued. The trial court found that 200 shares were issued. This judgment is appealed by Anne Brennan, widow of Daniel Brennan (Robert M. Brennan's son), and their five children, who were Daniel's heirs. Arguing that the judgment should be affirmed are the Appellees, Fonda Brennan, Sheila Brennan Dupepe, and Marleen Brennan Oldenburg individually (daughters of Robert M. Brennan and Daniel's sisters), Sheila Brennan Dupepe as Administratrix of the Succession of Robert M. Brennan and the Succession of Norma S. Brennan, and Brennan's House of Printing (BHOP). We affirm.
Brennan's House of Printing was incorporated in 1972 by Robert M. Brennan, the father and grandfather of the parties to this suit. All parties agree that this closely held corporation was operated with the minimum of formalities: there are no records of meetings of shareholders or of the board of directors, and no evidence that such meetings were ever held.
Brennan and his wife, Norma, had four children, to whom in 1981 he donated 100 shares of stock in the following allocation: Daniel, 51 shares; Fonda Marie, 24 shares; Marleen, 12½ shares, and Sheila, 12½ shares. It is undisputed that no certificates of stock have ever been found, nor does a record of this donation exist, though *1070 all parties agree that it occurred. From 1981 until his death, Daniel Brennan acted as President of BHOP.
Daniel passed away in 2003, whereupon his widow, Anne, assumed the operation of BHOP as acting President. Disputes about the running of the corporation arose between Anne and her five children on one side (who each inherited 10.2 shares from Daniel, totaling 51 shares of stock), and Daniel's siblings (Fonda, Marleen, and Sheila) on the other, who together owned 49 shares of stock.
In March of 2004, Fonda, Marleen, and Sheila filed a Petition for Involuntary Dissolution of the corporation. During discovery in that suit, in early 2005, certain documents were revealed that suggested Robert Brennan had caused 200, not 100, shares of BHOP stock to be issued. Until that time, all parties had assumed, based upon the Articles of Incorporation filed by Robert Brennan, that only 100 shares of stock had been authorized and issued. Since the discovery of the disputed 100 shares of stock had the potential to radically alter the controlling interests in the corporation, determination of whether these shares had in fact been issued became central to the outcome of all litigation concerning control of BHOP.
Upon discovery of the 100 putative shares, Fonda, Sheila, and Marleen called a meeting of the shareholders for January 27, 2005, over the objection of Anne and the heirs of Daniel Brennan. At that meeting, which Anne and her children did not attend, Fonda, Sheila, and Marleen, voting their own stock, and Sheila, voting the newly discovered 100 shares of stock as Administratrix of her parents' Successions, elected themselves directors and officers of BHOP. They then filed this Quo Warranto action against Anne Brennan to show by what authority she acted as President of BHOP.
On February 3, 2005, two days after the Quo Warranto action was filed, Anne Brennan and the heirs of Daniel R. Brennan filed a Petition for Temporary Restraining Order, Preliminary Injunction, and Declaratory Relief to enjoin Fonda, Sheila, and Marleen from representing that they had control of BHOP, and seeking a declaratory judgment, declaring the ownership of the shares of stock in the corporation.
The two matters were consolidated for trial, and after a hearing, a judgment was rendered, without written or oral reasons, granting the Writ of Quo Warranto against Anne Brennan. The court further found that there were a total of 200 shares of BHOP, in the following allocation of current ownership: 24 shares to Fonda Brennan; 12.5 shares to Sheila Brennan Dupepe; 12.5 shares to Marleen Brennan Oldenburg; 10.2 shares each to the five children of Daniel and Anne Brennan, and 100 shares under the administration of Sheila Brennan Dupepe as Administratrix of the Successions of Robert M. Brennan and Norma S. Brennan. The court further held that the shareholders' meeting held by Sheila, Marleen, and Fonda on January 27, 2005 was null and void, and dismissed with prejudice the Petition for Injunctive and Declaratory Relief.
On appeal, Appellants argue four Assignments of Error:
1. In holding that there are 200 validly authorized and issued shares of stock in the Corporation, the trial court erred in relying on documents outside the Articles of Incorporation of BHOP to prove the authorization and existence of the 100 "new" shares of stock;
2. In holding that there are 200 validly authorized and issued shares of stock in the Corporation, the trial *1071 court erred in its interpretation of the Articles of Incorporation that said Articles authorize more than 100 shares of stock;
3. The trial court erred in permitting John S. Folse to provide expert testimony as to the interpretation of terms of the Articles of Incorporation of the Corporation, as well as Annual Reports filed with the Secretary of State and federal tax returns filed with the Internal Revenue Service; and
4. The trial court erred in holding that Appellees had met their burden of proof in that the Appellees failed to show by a preponderance of the evidence that there were in fact 200 shares of stock in the Corporation that had been authorized and issued.
In their first Assignment of Error, Appellants argue that the trial court erred in considering any evidence other than the Articles of Incorporation in determining the number of shares of stock issued and outstanding. Appellees counter that Appellants, in the trial court, argued that the Articles of Incorporation were subject to more than one interpretation, failed to object to the same parol evidence to which they now object, and even joined with the Appellees in admitting the same evidence to the trial court. Appellants cannot now argue that that evidence is inadmissible, contend Appellees, because the trial court ruled against them on the merits.
Our review of the record shows that the Appellants did not object to the introduction of the parol evidence, and did in fact join with the Appellees in admitting the Annual Reports of BHOP on file with the Secretary of State, that they now object to on appeal. Additionally, Appellants introduced into evidence the corporate tax returns for BHOP from 1980 to 1996. Further, counsel for Appellants offered no objection to the introduction into evidence of the corporate tax returns from 2000 to 2003, nor to the financial statements of 1987, 1989, 1990, 1991, 1992, 2000, 2001, 2002, and 2003. Appellants cannot now object to the introduction of this evidence on appeal.
In their third Assignment of Error, Appellants argue that the trial court erred in accepting the expert testimony of John S. Folse, who was accepted by the court as an expert in certified public accountancy with experience in closely held corporations. Appellants objected to his testimony on the grounds that Folse would render a legal opinion on what the Articles of Incorporation meant and ultimately how many shares of stock had been authorized and issued, and thus usurp the exclusive province of the trier of fact.
The qualification of expert witnesses is discussed in Code of Evidence art. 702, which states:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
This was a bench trial. The trial judge rejected appellants' position, stating:
And I would agree that it's my decision to make, but that's what expert witnesses do. They give opinions. The Court can either accept or reject the opinion of an expert based upon the other evidence the Court admits.
We see no error in the trial court's acceptance of Folse as an expert witness on these grounds. Testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact. LSA-C.E. art. 704.
*1072 Next, Appellees argue that the trial court erred in its interpretation of the Articles of Incorporation. They contend that the Articles clearly authorize the issuance of only 100 shares of stock. They also argue that the Appellees failed to show by a preponderance of the evidence that 200 shares of stock were issued.
The Articles of Incorporation state, in pertinent part:
Article III
The total authorized number of shares of this corporation is One Hundred (100) shares, of which all are common shares of no par value ...
Article IV
The initial paid in capital of this corporation shall be $10,000.00 which represents $100.00 per share of stock of the corporation. This corporation is authorized to extend its capital to an amount not to exceed $100,000.00.
At trial, it was alleged that reading these two articles together created an ambiguity, in that it appears that the corporation could have authorized up to a total of 1,000 shares of stock, given that capital could be extended up to $100,000.00, with the value per share of stock at $100.00.
The Articles of Incorporation are a contract between the corporation and its shareholders. Odenwald v. Bewajobe Corp., 02-0091 (La.App. 4 Cir. 7/24/02), 824 So.2d 494, citing Stark v. Burke, Watt, and Co., 9 La.Ann. 341 (La.1854). Interpretation of a contract is the determination of the common intent of the parties. LSA-C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LSA-C.C. art. 2046. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. LSA-C.C. art. 2050.
In cases in which the contract is ambiguous, the agreement shall be construed according to the intent of the parties. Intent is an issue of fact which is to be inferred from all of the surrounding circumstances. A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and other contracts of a like nature between the same parties. LSA-C.C. art. 2053. Whether a contract is ambiguous or not is a question of law. Where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown.
Kappa Loyal, L.L.C. v. Plaisance Dragline & Dredging Co., Inc., 03-124 (La.App. 5 Cir. 6/19/03), 848 So.2d 765, 769, writ denied, 03-2348 (La.12/12/03), 860 So.2d 1154.
It is important to remember that from BHOP's incorporation in 1972 until Brennan donated the shares of stock to his children in 1981, he was the sole shareholder of BHOP. Therefore, the Articles of Incorporation were a contract between BHOP and Robert Brennan, who was also the incorporator of BHOP. Both parties admit that BHOP was run with minimal attention, if any, to corporate formalities. The trial court obviously found that an ambiguity was created when Article 3 and Article 4 were read together. This conclusion is not manifestly erroneous.
Turning to the parol evidence offered by the parties, it is not manifestly erroneous, likewise, for the trial court to have concluded that the Appellees proved, by a preponderance of the evidence, that Robert M. Brennan issued 200 shares of stock *1073 in BHOP, despite the contrary language in Article 3.
In his capacity as a certified public accountant and expert witness, Mr. Folse analyzed the Articles of Incorporation, BHOP's Annual Reports that were filed with the Secretary of State, various years' balance sheets and financial statements, and BHOP's corporate tax returns for the years 1980-1996 (produced by appellants), 2000, 2001, 2002, 2003. He drew the conclusion that BHOP had issued 200 shares of stock. The trial court accepted his conclusion and ruled accordingly.
The corporation's annual reports, filed with the Secretary of State, were entered into evidence for the years ending 1972 through 2004, with the exception of the years 1992, 1993, and 1995, which were missing. This represented 33 years of reports, 30 of which were in evidence. Of that thirty, eight (8) reports listed 200 as the number of shares, two (2) listed 100 as the number of shares, and twenty (20) annual reports left the space blank where the number of shares were reported. In BHOP's first Annual Report, for the year 1972, Robert Brennan filled out the form by hand, listing 200 shares of common stock. This number is repeated in the 1973 report, as well as the reports from 1975-1978, 1982-83. The 1974 and 1980 annual reports list 100 shares of common stock; in all other reports in evidence, the number is left blank. Such inconsistency is not explained.

 200 shares 100 shares blank
 1972 (hand) 1974 (hand) 1979, 1981,
 1973 (hand) 1980 (hand) 1984-91,
 1975 (hand) 1994,
 1976 (typed) 1996-2004
 1977 (hand)
 1978 (hand)
 1982 (typed)
 1983 (hand)

Until 1981, the annual reports were signed by Robert Brennan. Thereafter, various years were signed by Daniel Brennan, some reports indicating 200 shares and one indicating 100 shares. Most reports signed by Daniel Brennan are blank as to the number of shares.
Next, Folse analyzed the 2000 corporate tax return, in particular, the balance sheet and capital stock section thereof that identified common shares and preferred shares. The capital stock section shows $20,000.00 for the value of common stock. He testified that the $20,000.00 figure was consistent in all the tax returns and financial statements that he reviewed. He concluded from that information that $20,000.00 of capital stock was issued. He extrapolated the amount of 200 shares by looking next to the annual reports and the Articles of Incorporation, Article 3 and 4, which assigned a value of $100.00 per share of stock. Folse testified that he did not feel that the additional $10,000.00 was paid-in capital with no additional shares issued, because such an item would have been specifically listed on the balance sheet and in the tax returns, and in fact, no such listing was made. He felt that listing $20,000.00 as the value of the common stock, as Brennan did on BHOP's tax returns and balance sheets, showed that additional common stock was issued.
Folse testified that his opinion was reinforced when he looked at the 1980 corporate tax return introduced by counsel for appellants. That return was for the last year that Robert Brennan was sole shareholder, given that the donation of stock to his children took place in 1981. The Schedule K-1 lists 200 shares owned by Robert M. Brennan, date acquired 2/20/72. Schedule E of the 1980 tax return also indicates that 100% percent of the corporation was owned by Brennan.
On cross examination, Folse agreed that the annual reports, tax returns, and balance sheet information were at odds with *1074 the provision of Article III of the Articles of Incorporation, which states that only 100 shares of stock were authorized. He also agreed that Article IV could be interpreted to provide that the original 100 shares could have been sold for $1,000.00 per share. He agreed when counsel for appellants also noted that Schedule E of the 1980 tax return indicated that Robert Brennan had disposed of his ownership of the shares of stock, but that schedule did not indicate how many shares constituted his ownership.
Given the ambiguity created by comparing Article III and Article IV of the Articles of Incorporation concerning the number of authorized shares of stock, the annual reports and corporate tax returns provide sufficient evidence to support the trial court's conclusion that BHOP issued 200 shares of stock. The trial court's findings of fact are not manifestly erroneous, and consequently, the Appellees bore their burden of proof. Accordingly, we affirm the judgment of the trial court.
AFFIRMED.