CARTER, C.J.
 

 1 .This case involves the trial court’s grant of permanent injunctive relief in favor of the Louisiana State Bar Association (the LSBA) and against a public insurance adjuster, Earl T. Carr, Jr., and his public adjusting business, Carr and Associates, Inc. (hereafter collectively referred to as “Carr”). The injunctive relief is based on the trial court’s finding that Carr was engaged in the unauthorized practice of law, which is strictly prohibited by Louisiana law. For the following reasons, we affirm the trial court’s judgment.
 

 FACTS AND PROCEDURAL BACKGROUND
 

 The LSBA initiated this lawsuit on September 5, 2006, after receiving several complaints regarding Carr’s public insurance adjusting activities. Carr’s business involves contracting with individuals in a representative capacity in order to negotiate a settlement of the individual’s first-party property insurance claims with insurance companies. No employee of Carr is a licensed attorney in Louisiana or elsewhere. Carr’s fee for its public adjusting service is contingent upon and calculated by a percentage of the amount recovered for each claim. Based upon the complaints, the LSBA became convinced that Carr was engaged in the unauthorized practice of law because Carr: (1) advised and counseled its clients regarding the terms of their insurance policy coverage and their respective rights; (2) had direct contact and negotiated with its clients’ insurers regarding aspects of the clients’ insurance coverage, the monetary value of its clients’ claims, and settlement of its clients’ claims; (3) improperly used a contingency fee/percentage-based contract for its public adjusting services; and (4) instructed its clients’ insurers to send checks directly to Carr and made payable to Carr along with Carr’s clients. The LSBA believed that all of these activities were in direct violation of prohibitory language in the Louisiana Public Adjuster Act (the I,.LPAA),
 
 [1]
 
 LSA-R.S. 22:1691,
 
 et seq.
 
 (formerly cited as LSA-R.S. 22:1210.91,
 
 et seq.),
 
 and constituted the unauthorized practice of law in violation of LSA-R.S.
 
 *163
 
 37:212-213. Therefore, the LSBA sought a preliminary and permanent injunction restraining, enjoining, and prohibiting Carr from the outlined activities, as well as a declaratory judgment outlining what activities were prohibited by law.
 

 In response to the LSBA’s petition, Carr filed an answer and peremptory exceptions raising the objections of no right of action and no cause of action. Carr argued that the LSBA lacked standing to regulate the activities of a non-lawyer and could not bring a civil suit to enforce a criminal statute. The trial court heal’d argument on the exceptions at the same time that it received evidence on the preliminary injunction. The evidence submitted to the trial court at a three-day hearing included: (1) copies of Carr’s various contingency fee and percentage-based compensation contracts that required payment from insurance companies to Carr and the insured client whom Carr represented; (2) copies of an advertising brochure, notice of representation, and power of attorney, all indicating that Carr advised and assisted in the conclusion of insurance losses/claims and represented the interests of insured clients in mediation and negotiation in order to settle insurance claims; (3) testimony from Carr and several of Carr’s clients regarding the fee arrangement and the advice given by Carr; (4) testimony regarding complaints filed with the LSBA; (5) a surveillance tape of a private investigator and a representative of Carr where Carr is presented as an advocate in the insured |4client’s negotiating process with its insurers; and (6) expert testimony from a professor of law regarding the practice of law and the unauthorized practice of law.
 

 On October 23, 2006, the trial court rejected Carr’s peremptory exceptions raising the objections of no right of action and no cause of action, finding that the LSBA had standing to bring the action for injunc-tive relief. The trial court also granted a preliminary injunction against Carr, finding that the LSBA had established by a “preponderance of the evidence” that Carr had engaged in the unauthorized practice of law and enjoining Carr from specific prohibited activities. No appeal was taken from the preliminary injunction.
 
 [2]
 
 A few days later on October 31, 2006, the LSBA moved for a permanent injunction prohibiting Carr from engaging in the unauthorized practice of law and from utilizing unauthorized contingent/percentage-based fee contracts. The LSBA relied on all of the testimony and exhibits that had been introduced into the record at the preliminary injunction hearing. Carr responded by re-urging the peremptory exceptions raising the objections of no right of action and no cause of action, again challenging the LSBA’s standing to bring the action for injunctive relief. The trial court denied Carr’s peremptory exceptions for the same reasons it overruled them before the preliminary injunction proceeding.
 

 Trial on the merits of the permanent injunction was held on February 21, 2008. At the trial, the parties filed stipulations and submitted the entire record to date, including all of the evidence previously adduced at the hearing on the preliminary injunction. The trial court took the matter under advisement, and on March 25, 2008, rendered judgment in favor of the LSBA, issuing a permanent injunction without bond against Carr. The permanent injunction prohibited Carr |5from: (1) entering
 
 *164
 
 into fee agreements with clients that provide for payments to Carr that are contingent upon and calculated as a percentage of the amount paid on the clients’ insurance claims; (2) advising or counseling clients in a manner that constitutes the unauthorized practice of law, including giving advice on the terms of insurance policies, rights, limitations, coverage, liabilities, establishing and/or enforcing legal remedies, or law; (3) having any direct contact with its clients’ insurers to settle its clients’ claims against the insurers by negotiating with the insurers regarding legal aspects of its clients’ insurance policies and claims, acting on behalf of its clients to prevent a wrong or establish a right, and negotiating with its clients’ insurers over the monetary value of its clients’ claims; and (4) instructing insurance companies to send checks directly to Carr and made payable to Carr along with Carr’s clients.
 
 [3]
 

 Carr moved for a new trial, but that motion was denied. Carr then appealed to this court from the trial court’s final judgment issuing the permanent injunction.
 
 [4]
 
 Carr raises the following assignments of error (some of which have been combined):
 

 1. The trial court committed legal error in denying Carr’s peremptory exceptions raising the objections of no right of action and no cause of action.
 

 2. The trial court was manifestly erroneous in ruling against Mr. Carr individually as there was a lack of evidence in the record supporting any personal liability against Mr. Carr.
 

 3.The trial court was manifestly erroneous and committed legal error in allowing expert testimony on matters related to “the field of law.”
 

 |„4. The trial court’s decision was manifestly erroneous on the merits because it was based on entrapment evidence that was largely manufactured from a “sting operation.”
 

 LAW AND ANALYSIS
 

 Peremptory Exceptions
 

 Carr argues that the trial court legally erred when it twice overruled Carr’s peremptory exceptions raising the objections of no right of action and no cause of action. Initially, we note that a peremptory exception may be urged at any time. LSA-C.C.P. art. 928. And a party may re-urge a peremptory exception after it has been denied.
 
 Landry v. Blaise, Inc.,
 
 02-0822 (La.App. 4 Cir. 10/23/02), 829 So.2d 661, 664. The overruling of a peremptory exception is merely an interlocutory order, and the court has the right, at any stage of the proceeding at which the objection was made, to set aside that decree and to sustain the exception, upon finding that it erred in overruling it.
 
 R.G. Claitor’s Realty v. Juban,
 
 391 So.2d 394, 396 (La.1980). Therefore, Carr is entitled to seek review of any adverse or prejudicial interlocutory rulings in this unrestricted appeal that was taken from the final judgment, in addition to a review of the final judgment that granted the permanent injunction.
 
 See Wooley v. AmCare Health Plans of Louisiana, Inc.,
 
 05-2025 (La.App. 1 Cir. 10/25/06), 944 So.2d 668, 674;
 
 Rao v.
 
 
 *165
 

 Rao,
 
 05-0059 (La.App. 1 Cir. 11/4/05), 927 So.2d 356, 360,
 
 writ denied,
 
 05-2453 (La.3/24/06), 925 So.2d 1232.
 

 No Rigid of Action
 

 Carr strenuously urges that the LSBA has no standing or right to bring this action seeking injunctive and declaratory relief against non-lawyers. Carr maintains that there is no right of action for injunctive relief under the LPAA or the statutes defining the practice of law or the unauthorized practice of law. The JjLSBA counters that it initiated this lawsuit pursuant to its charge to protect the public from non-lawyers engaging in the unauthorized practice of law, contending that it has standing to bring such actions to regulate the practice of law, including the unauthorized practice of law, pursuant to Article III, Sections 1 and 2 of its Articles of Incorporation.
 
 [5]
 
 The LSBA also argues that the Louisiana Supreme Court has been granted the express, exclusive, and plenary constitutional authority and power to define and regulate all facets -of the practice of law, including the acts and conduct of persons who are engaged in the unauthorized practice of law.
 
 Meunier v. Bernich,
 
 170 So. 567, 577 (La.App.Orleans 1936).
 
 See also In re Crawford,
 
 06-2385 (La.11/9/06), 943 So.2d 331, 333;
 
 In re Broussard,
 
 05-0475 (La.4/22/05), 900 So.2d 814, 817;
 
 Bester v. Louisiana Supreme Court Committee on Bar Admissions,
 
 00-1360 (La.2/21/01), 779 So.2d 715, 717;
 
 ALCO Collections, Inc. v. Poirier,
 
 95-2582 (La.App. 1 Cir. 9/27/96), 680 So.2d 735,746,
 
 writ denied,
 
 96-2628 (La.12/13/96), 692 So.2d 1067.
 

 Additionally, the LSBA relies on LSA-R.S. 12:207 B(3) for providing it with the power to “sue and be sued” in its corporate name. Thus, the fact that the LSBA is a non-profit corporation does not bar the suit if the LSBA demonstrates that it possesses a “real and actual interest” in the litigation. Further, the LSBA points to LSA-R.S. 37:211, which provides that the LSBA “is created and regulated under the rule-making power of the Supreme Court of Louisianaf.]” This adoption by rule is pursuant to the constitutional mandate and inherent power of the Supreme Court to prescribe rules and regulations governing the practice of law. LSA-Const. Art. 5, Sec. 5(A) & (B); Rules of Supreme Comb of Louisiana, Rule 19, Section 1;
 
 8Louisiana State Bar Association v. Edwins,
 
 329 So.2d 437, 440-441 (La.1976). And while the Supreme Court will approve legislative acts (such as the LPAA) that are passed in aid of its inherent power to regulate the practice of law, statutes which tend to impede or frustrate the Supreme Court’s authority will be struck down.
 
 See Bester,
 
 779 So.2d at 717;
 
 ALCO Collections, Inc.,
 
 680 So.2d at 746;
 
 Meunier,
 
 170 So. at 576.
 

 A peremptory exception pleading the objection of no right of action tests whether the plaintiff has any interest in judicially enforcing the right asserted. LSA-C.C.P. art. 927 A(6);
 
 ALCO Collections, Inc.,
 
 680 So.2d at 738. Simply stated, the objection of no right of action tests whether this particular plaintiff, as a matter of law, has an interest in the claim sued on.
 
 ALCO Collections, Inc.,
 
 680 So.2d at 739. Evidence supporting or controverting an objection of no right of action is admissible, and generally, a party raising this peremptory exception bears the burden of proof.
 
 Id.
 
 Since evidence was ad
 
 *166
 
 mitted at the hearing on the preliminary injunction and re-submitted at the hearing on the permanent injunction, we will review the entire record to determine whether the LSBA has a right of action.
 
 See Ridgedell v. Succession of Kuyrkendall,
 
 98-1224 (La.App. 1 Cir. 5/19/99), 740 So.2d 173, 177.
 

 A plaintiff must have a “real and actual interest” in the action asserted.
 
 Ramsey River Road Property Owners Ass’n, Inc. v. Reeves,
 
 396 So.2d 873, 874 (La.1981). Standing is a concept utilized to determine if a party is sufficiently affected so as to ensure that a justiciable controversy is presented to the court.
 
 Meredith v. Ieyoub,
 
 95-0719 (La.App. 1 Cir. 4/4/96), 672 So.2d 375, 377,
 
 aff'd,
 
 96-1110 (La.9/9/97), 700 So.2d 478. The requirement of standing is satisfied if it can be said that the plaintiff has a legally protectable and tangible interest at stake in the litigation.
 
 Id.,
 
 672 So.2d at 377-378.
 

 |9We begin our analysis with the premise that it is unlawful for a natural person who has not been first duly and regularly licensed and admitted to the practice of law by the Supreme Court of this state to engage in the practice of law in this state.
 
 See
 
 LSA-R.S. 37:213 A(l) and Art. IV, Section 5 of the LSBA’s Articles of Incorporation. Any contracts made by a non-lawyer to render services in violation of this provision are for an unlawful cause, and, consequently, those contracts are against public policy and absolutely null.
 
 ALCO Collections, Inc.,
 
 680 So.2d at 742-743;
 
 Crocker v. Levy,
 
 615 So.2d 918, 921 (La.App. 1 Cir.1993);
 
 Duncan v. Gordon,
 
 476 So.2d 896, 897 (La.App. 2 Cir.1985); Meunier, 170 So. at 577. It is undisputed that Carr has no employees who are licensed to practice law in Louisiana. Therefore, if the public adjusting activities engaged in by Carr constitute the unauthorized practice of law, then the contracts providing for those public adjusting services are absolutely null. Louisiana Civil Code article 2030 states in pertinent part, that an “[a]bsolute nullity may be invoked by any person or may be declared by the court on its own initiative.” (Emphasis added.)
 
 ALCO Collections, Inc.,
 
 680 So.2d at 743;
 
 Crocker,
 
 615 So.2d at 921. Because the LSBA has the power to sue and be sued as a juridical person pursuant to LSA-R.S. 12:207 B(3),
 
 [6]
 
 the LSBA could have a right of action to assert the absolute nullity of Carr’s public adjusting contracts because the contracts provide for services that constitute the unauthorized practice of law and are against public policy. However, the LSBA’s petition does not specifically request that Carr’s contracts be declared absolutely null. Instead, the LSBA seeks injunctive relief against Carr’s unauthorized-practice-of-law activities. The question, then, is |10whether the LSBA has standing, or a real and actual interest, in the injunction litigation.
 

 Our examination of standing is aided by the criteria set forth in
 
 Hunt v. Washington State Apple Advertising Commission,
 
 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977), and adopted by the Louisiana Supreme Court in
 
 Ramsey River Road, Property Owners Ass’n, Inc.,
 
 396 So.2d at 874. The criteria that must be met before an association can bring a suit on behalf of its members are: (1) the members would otherwise be able to bring the suit in their own right, (2) the
 
 *167
 
 interests the association seeks to protect are pertinent to its purpose, and (3) neither the claim asserted by the association nor the relief sought requires the participation of individual members in the lawsuit.
 
 Id.
 
 These criteria are easily met in this case. Individual attorneys who are members of the LSBA, some of whom initiated the complaints against Carr, obviously would be able to institute this lawsuit in their individual capacities in order to stop a non-lawyer from rendering services that call for the professional training, licensing, and judgment of a lawyer as required by the Supreme Court of Louisiana. Further, the stated purpose of the LSBA is to regulate the practice of law, uphold the honor of the profession of law, and, generally, to promote the welfare of the profession of law in Louisiana.
 
 See
 
 LSBA Articles of Incorporation, Article III, Section 1. And the statutes dealing with the unauthorized practice of law were established to protect the public.
 
 Louisiana Claims Adjustment Bureau, Inc. v. State Farm Ins. Co.,
 
 38,709 (La.App. 2 Cir. 6/23/04), 877 So.2d 294, 299,
 
 writ denied,
 
 04-1890 (La.10/29/04), 885 So.2d 595. Thus, the instant suit brought to protect the public from and enjoin the unauthorized practice of law by a non-lawyer is consistent with the expressed purpose of the LSBA. Finally, the participation of all of the individual members of the LSBA is not necessary for a proper adjudication |nof the injunction issue, since a single attorney could potentially bring this action for injunctive relief to serve the public interest of only permitting licensed lawyers to act in matters that require professional legal judgment pursuant to a contingency fee contract.
 
 See Louisiana Claims Adjustment Bureau, Inc.,
 
 877 So.2d at 299. Therefore, we find that the LSBA had standing to bring this lawsuit.
 

 No Cause of Action
 

 Carr also maintains that the LSBA has no cause of action for injunctive relief because the LSBA relies on a “criminal” statute that prohibits the unauthorized practice of law.
 
 See
 
 LSA-R.S. 37:213. As used in the context of the peremptory exception, a “cause of action” refers to the operative facts which give rise to the plaintiffs right to judicially assert the action against the defendant.
 
 Scheffler v. Adams and Reese, LLP,
 
 06-1774 (La.2/22/07), 950 So.2d 641, 646. The exception is triable on the face of the pleadings, and for purposes of resolving the issues raised by the exception, the well-pleaded facts in the petition are accepted as true in order to determine whether the law affords a remedy on the facts alleged in the petition.
 
 Id.
 
 Because the exception of no cause of action raises a question of law and the trial court’s decision is based solely on the sufficiency of the petition, review of the trial court’s ruling on an exception of no cause of action is
 
 de novo. Id.
 
 The pertinent question is whether, in the light most favorable to the plaintiff, and with every doubt resolved in the plaintiffs favor, the petition states any valid cause of action for relief.
 
 Id.
 

 Accepting all of the allegations in the LSBA’s petition as true, and applying the legal principles set forth above, we find that the petition alleges facts sufficient to state a cause of action for injunc-tive and declaratory relief seeking to restrain and enjoin Carr from the direct violation of laws prohibiting the unauthorized practice of law. Louisiana jurisprudence is replete with examples of a plaintiff 112requesting injunctive relief in order to prohibit a defendant from engaging in unlawful behavior as outlined in a criminal or prohibitory statute, although there is no recorded case dealing specifically with an injunction against the unauthorized prac
 
 *168
 
 tice of law.
 
 [7]
 
 A plaintiff is entitled to in-junctive relief without the requisite showing of irreparable injury when the conduct sought to be restrained is unlawful, as when the conduct sought to be enjoined constitutes a direct violation of a prohibitory law.
 
 Jurisich v. Jenkins,
 
 99-0076 (La.10/19/99), 749 So.2d 597, 599. And once a plaintiff has made a
 
 prima facie
 
 showing that the conduct to be enjoined is reprobated by law, the plaintiff is entitled to injunctive relief without the necessity of showing that no other adequate legal remedy exists.
 
 Id.
 
 A thorough review of the LSBA’s petition reveals that Carr’s alleged activities, if accepted as true, constitute the unauthorized practice of law, which is specifically prohibited by Louisiana law.
 

 The substantive issues regarding the unauthorized practice of law in this case are governed by the provisions of the LPAA, at LSA-R.S. 22:1691 through LSA-R.S. 11S22:1708 (formerly cited as LSA-R.S. 22:1210.91 through LSA-R.S. 22:1210.108), and LSA-R.S. 37:212, defining the “practice of law,” as well as LSA-R.S. 37:213,
 
 [8]
 
 which provides the penalty for the unauthorized practice of law. Thus, there are two pertinent statutory scenarios in Louisiana that prohibit the unauthorized prac
 
 *169
 
 tice of law, and one is specifically directed toward the actions of public adjusters.
 
 [9]
 
 It follows that the LSBA has stated a cause of action for injunctive relief by alleging that Carr has directly violated statutory prohibitions by engaging in the unauthorized practice of law and illegally contracting with its clients on a contingency fee/percentage-based contract. This argument has no merit.
 

 | i,|We likewise find no merit in Carr’s assertion that the LSBA has no “private” cause of action to enjoin the unauthorized practice of law since a remedy involving a criminal prosecution could be brought against Carr for his actions. The record does not contain evidence of any criminal prosecution against Carr, and it is clear that the LSBA has not brought a “private” cause of action for damages against Carr.
 
 [10]
 
 Furthermore, if legal redress against defendants who violate the law was considered an adequate remedy at law, no injunction petition urging violation of the law would ever be successful.
 
 See Star Enterprise v. State through Department of Revenue and Taxation,
 
 95-1980 (La.App. 1 Cir. 6/28/96), 676 So.2d 827, 834,
 
 writ denied,
 
 96-1983 (La.3/14/97), 689 So.2d 1383. Moreover, because the LSBA alleged that Carr had directly violated Louisiana law by engaging in the unauthorized practice of law in its public adjusting business, the LSBA need not show the lack of an adequate remedy in order to obtain injunctive relief.
 
 Id.
 
 The same reasoning applies to any suggestion that another remedy is potentially available by virtue of the State of Louisiana Insurance Commissioner’s ability to suspend, revoke, or refuse to issue, renew, or reinstate a public adjuster’s license when a public adjuster has been found to have engaged in the unauthorized practice of law as defined in LSA-R.S. 37:212 and 213.
 
 See
 
 LSA-R.S. 22:1700 B(2) & F (formerly redesignated and cited as LSA-R.S. 22:1210.100 B(2) & F after original enactment as LSA-R.S. 22:1210.80 B(2) & F).
 
 [11]
 

 
 *170
 
 li.Jn summary, we find that the trial court properly overruled Carr’s peremptory exceptions raising the objections of no right of action and no cause of action. Carr’s assignments of error on the exceptions are without merit.
 

 !.Permanent Injunction against Mr. Carr
 
 Individually
 
 [12]
 

 Carr next argues that the trial court manifestly erred in finding on a preponderance of the evidence that Mr. Carr had personally engaged in the unauthorized practice of law. The manifest error standard is the appropriate standard of review for the issuance of a permanent injunction, as well as a trial court’s factual determination of whether an activity constitutes the unauthorized practice of law.
 
 See Parish of East Feliciana through East Feliciana Parish Police Jury v. Guidry,
 
 04-1197 (La.App. 1 Cir. 8/10/05), 923 So.2d 45, 53,
 
 writ denied,
 
 05-2288 (La.3/10/06), 925 So.2d 515. Under this standard, in order to reverse a trial court’s determination of fact, an appellate court must review the entire record and find that a reasonable factual basis does not exist for the finding and further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous.
 
 Stobart v. State through Dept. of Transp. and Development,
 
 617 So.2d 880, 882 (La.1993). Thus, if the trial court’s findings are reasonable in light of the record reviewed in its entirety, this court may not reverse, even if convinced that had it been sitting as trier of fact, it would have weighed the evidence differently.
 
 Id,
 

 With these precepts in mind, we find that the record provides a reasonable basis for the trial court’s determination that Carr, and Mr. Carr, individually, engaged in the unauthorized practice of law while conducting the business of [ 1(ipublic adjusting. The record supports a finding that pursuant to a contingency and/or percentage-based fee arrangement, Mr. Carr individually advised clients of issues and rights concerning the redress of legal wrongs under their insurance policies, negotiated settlements and directly contacted insurers to discuss and evaluate the merits of his clients’ insurance claims. Mr. Carr admits that he engaged in all of these activities without a law license. He therefore engaged in the unauthorized practice of law.
 
 See Louisiana, Claims Adjustment Bureau, Inc.,
 
 877 So.2d at 299;
 
 Duncan,
 
 476 So.2d at 897; and
 
 Meunier,
 
 170 So. at 577. Based on Mr. Carr’s testimony alone, we cannot say that the trial court was clearly wrong in finding that Mr. Carr, individually, along with his public adjusting business, engaged in the unauthorized practice of law. The trial court correctly determined that the LSBA was entitled to permanent injunctive relief against Mr. Carr, individually, as well as against Mr. Carr’s public adjusting business.
 

 Expert “Legal” Opinion
 

 In addressing Carr’s next assignment of error, we must determine whether the trial court erred in allowing expert testimony on matters related to the “field of law.” Carr objected to the need for expert testimony on the practice of law, arguing that it is the trial court’s function
 
 *171
 
 to ultimately determine what the law is since the court itself is an expert on the law. The trial court overruled Carr’s objection and allowed the testimony of Professor Dane S. Ciolino, of Loyola University Law School, as an expert in the field of law, ethics, and the unauthorized practice of law. The trial court reasoned that the expert had specialized knowledge that would assist it as the trier of fact by Professor Ciolino testifying about the standard of conduct involved and the particular provisions of the law. The trial court ruled that according to LSA-C.E. art. 704, opinion testimony that is otherwise admissible is “not to be excluded solely because it 117embraces an ultimate issue to be decided by the trier of fact.” Professor Ciol-ino testified that Carr’s conduct was clearly equivalent to practicing law, and the unauthorized practice of law is a concept that is difficult to define and is fact-specific. Professor Ciolino opined that Carr was acting in the manner of lawyers without the ethical constraints under which lawyers operate.
 
 [13]
 

 A trial court has broad discretion in determining who should or should not be permitted to testify as an expert and whether expert testimony is admissible. Sc
 
 hwamb v. Delta Air Lines, Inc.,
 
 516 So.2d 452, 459 (La.App. 1 Cir.1987),
 
 writs denied,
 
 520 So.2d 750 (La.1988). The trial court may accept or reject the uncontradicted opinions expressed by an expert as to ultimate facts, based upon the other evidence that the trial court admits.
 
 See Brennan’s House of Printing, Inc. v. Brennan,
 
 05-647 (La.App. 5 Cir. 2/27/06), 924 So.2d 1067, 1071,
 
 writ denied,
 
 06-0689 (La.5/26/06), 930 So.2d 33;
 
 Pendleton v. Barrett,
 
 97-570 (La.App. 3 Cir. 12/23/97), 706 So.2d 498, 500. The effect and weight to be given expert testimony is within the broad discretion of the trial court.
 
 Id.,
 
 706 So.2d at 501. The decision reached by the trial court regarding expert testimony will not be disturbed on appeal absent a finding that the trial court abused its discretion.
 
 Morgan v. State Farm Fire and Casualty Company, Inc.,
 
 07-0334 (La.App. 1 Cir. 11/2/07), 978 So.2d 941, 946. Having thoroughly reviewed the evidence and expert testimony, we find no abuse of the trial court’s discretion in accepting Professor Ciolino’s opinion testimony as an expert witness who had specialized | ^knowledge that assisted the trial court with the factual determinations in this case.
 
 [14]
 
 We further find that the evidence
 
 *172
 
 supports the trial court’s findings on the ultimate issue before it regarding Carr’s unauthorized practice of law. This assignment of error is without merit.
 

 Entrapment
 

 Carr asserts in its final assignment of error that the trial court’s decision was erroneous because it was based on entrapment evidence that was largely-manufactured from a “sting operation.” Carr is referring to the testimony of Glen Gay, a private investigator hired by the LSBA to contact Carr regarding Gay’s personal insurance claim for property damage to his home. Gay altered the facts of his insurance claim when he met with Cai'r’s representative. The meeting between Gay and Carr’s representative was video and audio recorded without the knowledge of Carr’s representative. The recording of the meeting was admitted into evidence at the trial on the preliminary injunction and was resubmitted at the hearing on the permanent injunction. Carr did not object to the introduction of the recording into evidence nor to Gay’s testimony regarding his investigation or the recording of the meeting.
 

 In order to preserve an evi-dentiary issue for appellate review, it is essential that the complaining party enter a contemporaneous objection to the evidence and state the reasons for the objection.
 
 Anderson v. Board of Supervisors of Louisiana State University and Agricultural and, Media-ideal College, through
 
 1
 
 mLoidsiana State University Health Science Center,
 
 06-153 (La.App. 5 Cir. 10/17/06), 943 So.2d 1198, 1201. The failure to make a contemporaneous objection during the trial waives the right of a party to complain on appeal that the evidence was improperly admitted at trial.
 
 Id.; Himel v. State through Department of Transportation and Development,
 
 04-274 (La.App. 5 Cir. 10/12/04), 887 So.2d 131, 137,
 
 writ denied,
 
 04-2802 (La.3/18/05), 896 So.2d 999. Our review of Gay’s testimony and the recorded meeting which was admitted into evidence during Gay’s testimony does not reveal any objection on the part of Carr. The record shows that Carr questioned Gay’s investigative tactics at one point in the context of cross-examining the LSBA’s expert witness, Professor Ciol-ino. Still, at that point there was no formal objection to the testimony about the recording or Gay’s investigative tactics. Therefore, we find that Carr has waived its right to contest the admission of Gay’s testimony and the recorded investigation into evidence. We also find that Carr has waived its right to contest the trial court’s consideration of that evidence when making its findings and conclusions. Thus, this assignment of error is without merit.
 

 CONCLUSION
 

 For all of the reasons set forth in this opinion, we reiterate that we hereby deny the LSBA’s motion to partially strike Carr’s reply brief. Additionally, we affirm the trial court’s judgment granting a permanent injunction in favor of the LSBA and enjoining Carr and Associates, Inc. and Earl T. Carr, Jr., individually,
 
 from
 
 engaging in the unauthorized practice of law as outlined in the trial court’s judgment dated March 25, 2008. All costs of this appeal are assessed to defendants, Carr and Associates, Inc. and Earl T. Carr, Jr., individually.
 

 MOTION DENIED; TRIAL COURT JUDGMENT AFFIRMED.
 

 [1]
 

 . The LPAA was enacted by Acts 2006 No. 806, § 1, was approved and signed by the Governor on June 30, 2006, and became effective August 15, 2006, which was several weeks before this lawsuit was filed. The Louisiana Insurance Code was amended, reenacted, and renumbered by Acts 2008, No. 415, § 1, effective January 1, 2009. Throughout this opinion, we will refer to the current numbering of the LPAA even though the renumbering was not in effect at the time that this lawsuit was filed. The language of the LPAA was not changed when the Insurance Code was renumbered in 2008. We will also parenthetically refer to the former statute number for ease of referencing.
 

 [2]
 

 . After this ruling, Carr applied to the Louisiana Supreme Court for a writ of supervisory review, but it was denied on March 9, 2007.
 
 Louisiana State Bar Association v. Carr and Associates, Inc. and Earl T. Carr, Jr.,
 
 07-0188 (La.3/9/07), 949 So.2d 453(unpublished writ action).
 

 [3]
 

 . The permanent injunction judgment also specifically excluded any flood claims pursuant to the National Flood Insurance Act. See 42 U.S.C. 4001,
 
 el seq.
 
 Additionally, the judgment was silent regarding declaratory relief. Those particular aspects of the judgment are not at issue in this appeal.
 

 [4]
 

 . Louisiana Code of Civil Procedure article 3612 provides that "[a]n appeal may be taken as a matter of right from an order or judgment relating to a preliminary' or final injunction.’’
 

 [5]
 

 . LSBA Articles of Incorporation, Article III, Section 1, states in pertinent part: "The objects and purposes of this Association shall be to regulate the practice of law, ... uphold the honor of the Courts and of the profession of law, ... and, generally, to promote the welfare of the profession in the State.” (Emphasis added.)
 

 [6]
 

 .
 
 The general rule is that when the word "person” is used in a statute, the statute applies to corporations as well as to natural persons if such corporations fall within the reason and purpose of the provision of the statute. SS v.
 
 State Ex Rel. Dept. of Social Serv.,
 
 02-0831 (La. 12/14/02), 831 So.2d 926, 933-934.
 

 [7]
 

 .
 
 See Jurisich v. Jenkins,
 
 99-0076 (La.10/19/99), 749 So.2d 597, 601 (violation of statute authorizing oyster lease renewals by Secretary of the Louisiana Department of Wildlife and Fisheries);
 
 Spine Diagnostics Center of Baton Rouge, Inc. v. Louisiana State Board of Nursing,
 
 08-0813 (La.App. 1 Cir. 12/23/08), 4 So.2d 854, (violation of statute regarding scope of certified registered nurse anesthetists' practice of performing services that could only be performed by a physician licensed to practice medicine in Louisiana);
 
 Parish of East Feliciana through East Feliciana Police Jury v. Guidry,
 
 04-1197 (La.App. 1 Cir. 8/10/05), 923 So.2d 45, 51,
 
 writ denied,
 
 05-2288 (La.3/10/06), 925 So.2d 515 (violation of noise and nuisance ordinances by property owner operating a motocross business);
 
 Star Enterprise v. State through Dept. of Revenue and Taxation,
 
 95-1980 (La.App. 1 Cir. 6/28/96), 676 So.2d 827, 834,
 
 writ denied,
 
 96-1983 (La.3/14/97), 689 So.2d 1383 (violation of mandatory rule-making requirements for adopting a new formula for computing taxable values);
 
 Slate through Louisiana State Board of Examiners of Psychologists v. Alterberry,
 
 95-0391 (La.App. 1 Cir. 11/9/95), 664 So.2d 1216, 1223-1224 (violation of laws prohibiting the unauthorized practice of psychology);
 
 Legislation in Support of Animals v. Vermilion Parish Police Jury,
 
 92-972 (La.App. 3 Cir. 5/5/93), 617 So.2d 1243, 1247 (violation of the cruelty to animals criminal statute); and
 
 Quachita Parish Police Jury v. American Waste and Pollution Control Company, 606
 
 So.2d 1341, 1350 (La.App. 2 Cir. 10/14/92),
 
 writ denied,
 
 609 So.2d 234 (La.1992), ce
 
 rt. denied,
 
 508 U.S. 909, 113 S.Ct. 2339, 124 L.Ed.2d 249 (1993) (violation of storage of hazardous waste statute).
 

 [8]
 

 . Louisiana Revised Statute 37:213 provides in pertinent part:
 

 A. No natural person, who has not first been duly and regularly licensed and admitted to practice law by the supreme court of this state, no corporation ... except a professional law corporation ... shall:
 

 (1) Practice law.
 

 (2) Furnish attorneys or counsel or an attorney and counsel to render legal services.
 

 (3) Hold himself or itself out to the public as being entitled to practice law.
 

 (4)
 
 Render or furnish legal services or advice.
 

 C.
 
 Any natural person who violates any provision of this Section shall be fined not more than one thousand dollars or imprisoned not more than two years, or both.
 

 D. Any ... corporation ... which violates this Section shall be fined not more than five thousand dollars. Every officer, trustee, director, agent, or employee of a corporation ... who, directly or indirectly, engages in any act violating any provision of this Section or assists the corporation ... in the performance of any such violation is subject to the penalties prescribed in this Section for violations by a natural person.
 

 (Emphasis added.)
 

 [9]
 

 . Public adjusting is the business of "[¡Investigating, appraising, or evaluating and reporting to an insured in relation to a first-party claim for which coverage is provided by an insurance contract that insures the property of the insured.... Public adjusting does not include any activities which may constitute the unauthorized practice of law. Nothing in this Part shall be considered as permitting the unauthorized practice of law.” (Emphasis added.) LSA-R.S. 22:1692(8)(a) (formerly re-designated and cited as LSA-R.S. 22:1210.92(8)(a) after original enactment as LSA-R.S. 22:1210.72(8)(a)). The purpose of the LPAA is to govern the qualifications and procedures for the licensing of public adjusters, and it specifies the duties of and restrictions on public adjusters, including "limiting their licensure to assisting insureds in first-party claims in a manner which avoids the unauthorized practice of law as defined in [LSA-] R.S. 37:212 and 213.” (Emphasis added.) LSA-R.S. 22:1691 (formerly cited as LSA-R.S. 22:1210.91). Additionally, the LPAA specifically stales that a public adjuster shall not enter into any contract or arrangement with an insured “which provides for payment of a fee to the public adjuster which is contingent upon, or calculated as a percentage of, the amount of any claim or claims paid to or on behalf of an insured by the insurer and any such contract shall be against public policy and is null and void.” LSA-R.S. 22:1703 A (formerly re-designated and cited as LSA-R.S. 22:1210.103 A after original enactment as LSA-R.S. 22:1210.83 A).
 

 [10]
 

 . We distinguish
 
 Treen v. The Republican Party of Louisiana,
 
 99-2073 (La.App. 1 Cir. 9/22/00), 768 So.2d 273, 275, and the unreported federal district court case,
 
 Hickham v. Douglas,
 
 96-1255 (E.D.La.11/21/96)(unpub-lishcd), relied on by Carr, because the plaintiff's cause of action in each of those cases was for damages, penalties, sanctions, reimbursement, and/or attorney fees. In the case
 
 sub judice,
 
 the LSBA did not seek damages, but only requested injunctive and declaratory relief.
 

 [11]
 

 . We specifically note, however, that at the time that this lawsuit was filed, public adjusters were not required to be licensed; that
 
 *170
 
 requirement did not go into effect until June 30, 2007. LSA-R.S. 22:1693 A (formerly re-designated and cited as LSA-R.S. 22:1210.93 A after original enactment as LSA-R.S. 22:1210.73 A).
 

 [12]
 

 . We find no merit to the LSBA's motion to partially strike Carr's reply brief based on the grounds that Carr had abandoned some of its assignments of error and then later impermis-sibly discussed those assignments
 
 in its
 
 reply brief. We will consider all of Carr’s assignments of error even though tire arguments are sparse on several issues and do not contain individual headings. The LSBA's motion to partially strike is hereby denied.
 

 [13]
 

 . Multiple factors led to Professor Ciolino’s opinion, including: (1) Carr gave legal advice and engaged in legal analysis by construing coverage and limitations in insurance policies, rights regarding claims for bad faith and other legal remedies, and interpreting case law; (2) Carr acted in a representative capacity as an advocate for clients pursuant to a contract of representation; (3) Carr’s manner of compensation suggested he and his company are compensated like lawyers on a percentage of what is recovered; (4) Carr had a power of attorney document that allowed Carr to be an "attorney in fact” for clients at mediations without the presence of the client; (5) Carr’s notice of representation forbids insurance companies from dealing directly with Carr’s clients; and (6) Carr’s power of attorney document authorizes Carr to prepare documents that are necessary to completely settle the client's insurance claim.
 

 [14]
 

 . While expert testimony is generally not permitted to address the meaning of domestic law, in this case the bulk of the expert testimony did not address the meaning of law, but rather addressed Carr's conduct and whether it constituted the unauthorized practice of law, thus aiding the trial court’s factual determinations. Any testimony touching on an interpretation of jurisprudence or statutes at issue was harmless error in this bench trial.
 
 See
 
 LSA-C.E. art. 704;
 
 In re Succession of Allison,
 
 31,495 (La.App. 1 Cir. 1/29/99), 727 So.2d 683, 684 n. 1, writ
 
 granted and remanded on other grounds,
 
 99-0595 (La.3/24/00), 757 So.2d 647;
 
 Wilson v. Wilson,
 
 542 So.2d 568, 573 (La.App. 1 Cir.1989).